RAYMOND I. LEETE *vs.* GRISWOLD POST, No. 79,
AMERICAN LEGION, ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 8th, 1931—decided February 23d, 1932.

*Daniel D. Morgan,* with whom, on the brief, were *Philip Pond* and *Joseph B. Morse,* for the appellant (defendant Griswold Post, No. 79, American Legion).

*Samuel E. Hoyt* and *Arthur F. Brown,* with whom, on the brief, was *Irving Sweedler,* for the appellant (defendant The Connecticut Tire Service, Inc.).

*Herbert L. Emanuelson,* with whom was *Armen K. Krikorian,* and, on the brief, *Kenneth Wynne,* for the appellee (plaintiff).

HINMAN, J. On the morning of January 14th, 1930, the plaintiff was seriously injured in an automobile accident in Madison, and was removed to the Guil-

ford Sanatorium where he received emergency treatment, but as there were no facilities for the taking of X-rays, he was later placed in an ambulance of the defendant Griswold Post for the purpose of transporting him to a hospital in New Haven. The driver was told to convey the plaintiff to the hospital as quickly as possible but to use care in driving over rough roads. The ambulance was owned and maintained by the Post for the purpose of transporting such members of the public in Guilford, Madison, and Clinton as might need the services of an ambulance. No charge was made to the plaintiff, and there was no expectation that any charge would be made, for his transportation. There was, however, a reasonable prospect that, out of gratitude for such transportation, the plaintiff would later make a donation to the Post for the benefit of the fund devoted to the maintenance of the ambulance.

The ambulance was equipped with a siren which was operated electrically, and while proceeding westerly on Chapel Street in New Haven the driver sounded it continuously and loudly. As the ambulance approached the intersection of Orchard and Chapel Streets, the traffic signal light located at the intersection turned first yellow and then red against it, turning yellow when the ambulance was at such a distance from the intersection that it could have been brought to a stop with safety before entering, and red before it entered the intersection. However, it proceeded into the intersection without stopping and at a speed of about forty miles per hour.

At approximately the same time that the ambulance was approaching the intersection, an oil truck owned by the defendant Connecticut Tire Service was proceeding southerly on Orchard Street. At a point about fifty feet north of the intersection the driver, noticing

that the signal light was yellow, started to slacken speed, but when the light turned green toward him, he proceeded into the intersection at a speed of about twenty miles per hour. The driver failed to notice the sound of the ambulance siren.

At the respective rates of speed at which the vehicles were going each came within the line of vision of the driver of the other when the oil truck was at least twenty-five feet from the northerly line of the intersection and the ambulance at least fifty feet from the easterly line of the intersection. Neither driver, however, looked in the direction from which the other vehicle was approaching and neither saw the other vehicle until just the instant before the cars came into collision at about the center of the intersection. The force of the collision inflicted additional injury upon the plaintiff and he suffered a severe shock.

From the facts found, including the foregoing, the trial court reached the conclusion that the collision was caused by the concurrent negligence of the two drivers, that of the ambulance driver consisting in that he drove into the intersection at a reckless rate of speed and when the traffic light was against him, and in that he failed to look to his right for traffic coming from that direction, and that of the driver of the truck in that he failed to hear the sound of the siren, proceeded into the intersection without looking to his left, and failed to observe the ambulance and that it was not going to stop.

It was also concluded that the ambulance did not have the right of way at the intersection because § 394 of the General Statutes supersedes § 1595; the defendant Griswold Post was a public carrier as that phrase is used in § 1628 of the General Statutes; that the transportation of the plaintiff was for the mutual benefit of both the plaintiff and the Post, and that the

plaintiff was not a guest in the ambulance. The assignments of error relate to these conclusions.

Consideration of the conclusion that the ambulance did not have the right of way involves several statutory provisions bearing upon the respective rights of the vehicles of the two defendants with reference to travel through the intersection. If the situation were governed by the familiar general regulation prescribed by the "rules of the road" statute (§ 1639), the truck would have the right of way as against the ambulance, as the former was approaching the latter from the right and arriving at the intersection at approximately the same time. Here, however, one of two other sections of the statutes concededly has controlling application and effect. The presence of a traffic signal light at the intersection made operative, as to traffic generally, a provision of the Uniform Traffic Control Act (Public Acts, 1929, Chapter 209, now Chapter 25 of the General Statutes) contained in § 394 (b) of the General Statutes which appears in a footnote. Under this rule, also, upon the facts found, the truck had the right of way as against the ambulance. There is, however, another relevant statute which originated as Chapter 79 of the Public Acts of 1925, entitled An Act Concerning the Right of Way of Ambulances and

---

Whenever traffic at an intersection shall be alternately directed to proceed and to stop by the use of signals exhibiting colored lights or the words "Go," "Caution" (or "Wait") and "Stop," said lights and terms shall indicate the following: (1) Green or "Go": Traffic facing the signal may proceed, except that vehicular traffic shall yield the right of way to pedestrians and vehicles lawfully within a crosswalk or the intersection at the time such signal was exhibited; (2) Yellow or "Caution" (or "Wait"), when shown following the green or "Go": Traffic facing the signal shall stop before entering the intersection unless so close to the intersection that a stop cannot be made in safety; (3) Red or "Stop": Traffic facing the signal shall stop before entering the intersection and remain standing until green or "Go" is shown alone.

Fire Apparatus, the presently material provisions of which are quoted in a footnote. This statute, standing by itself, expressly grants the right of way to the ambulance upon the state of facts disclosed by the record. The trial court ruled that § 394, having been passed in 1929, superseded and repealed by implication § 1595, which was adopted four years earlier. This conception of the statutory situation apparently was arrived at by application of the general rule that if a legislative Act is irreconcilably repugnant to or in conflict with a prior Act, the later operates as a repeal of the earlier to the extent of the inconsistency. 25 R. C. L. p. 914; 36 Cyc. p. 1073. However, repeals by implication are not favored and occur only when two statutes are so repugnant to each other as to clearly indicate that the later Act was intended, wholly or in part, as a substitute for the former. If both can be reconciled, they must stand together and be accorded concurrent effect and operation. *Root* v. *Connecticut Co.*, 94 Conn. 227, 108 Atl. 506; *Fair Haven & W. R. Co.* v. *New Haven,* 75 Conn. 442, 446, 53 Atl. 960; *Kallahan* v. *Osborne,* 37 Conn.

"Sec. 1595. (a) The driver or operator of an ambulance, while answering a call or taking a patient to a hospital, and the driver or operator of any vehicle used by a fire company or by any officer of a fire company or fire department while on the way to a fire, provided such ambulance or vehicle used by a fire company or an officer thereof shall be equipped with a horn, gong, bell or siren sounding a loud warning, distinctive from warnings sounded by horns, gongs, bells or sirens commonly in use on motor vehicles, shall have the right of way over all other traffic upon any public or private way. (b) The driver or operator of any vehicle other than one of those described in sub-section (a) of this section shall, upon the approach of any vehicle of the kind described therein, immediately drive or operate such vehicle as near as practicable to the right hand side of the traveled portion of the highway in the direction in which such driver or operator is traveling and stop such vehicle until such ambulance or vehicle used by a fire company or an officer thereof shall have passed."

488; 1 Swift's Digest, 12; 36 Cyc. p. 1146. "If courts can by any fair, strict or liberal construction find for the two provisions a reasonable field of operation, without destroying their evident intent and meaning, preserving the force of both, and construing them together in harmony with the whole course of legislation upon the subject, it is their duty to do so." *Curry* v. *Lehman,* 55 Fla. 847, 855, 47 So. 18; *Crawford* v. *Roloson,* 262 Mass. 527, 160 N. E. 303; *Masterson* v. *Whipple,* 27 R. I. 192, 61 Atl. 446. Situations affording occasion for application of these principles usually concern successive Acts of the legislature. The presumption against repeal by implication and the force of the reconciliation rule are augmented when, as here, both the provisions have been retained in a general revision of the statutes, and by the re-enactment of such revision established as parts of the entire statute law of the State. *State* v. *McGuire,* 84 Conn. 470, 478, 80 Atl. 761; *Eld* v. *Gorham,* 20 Conn. 8, 15.

In our judgment the provisions of § 394 (b) and § 1595 may and should be so construed that both shall be operative in their respective fields—the former as a part of the Traffic Control Act of general application and utility, but subject to the specific exceptions created, for obvious reasons of emergent necessity, by the express provisions of the latter. This is the persuasive significance of the omission from the Traffic Control Act of any repeal of the prior Act in question, and the retention of both statutes by the revisers. Section 1595 includes a requirement for a signal so distinctive and audible as to apprise all other traffic in the vicinity of the impending passage of a vehicle of a nature preferred because of imperative need of rapid and unimpeded progress, and requires conduct on the part of other traffic consistent with that end. One has but to contemplate the necessary result of

compliance by fire apparatus and ambulances with all traffic light signals and traffic regulations to appreciate the need and purpose of such an exception in their favor as this statute provides. We hold, therefore, that this exception obtains, the facts bring the ambulance within its protection, and the fact that the traffic light was against it did not, of itself, render negligent the act of its driver in traversing the intersection.

It does not follow that this exception confers a privilege to neglect the requirements of reasonable care, under the circumstances, in the operation of the excepted vehicles; the rate of speed or manner of operation in view of the conditions existing, or disregard of reasonably obvious hazards from or to other vehicles or to pedestrians may be such as to constitute negligence. The trial court's conclusion as to the negligence of the ambulance driver specifies as elements not only entering the intersection when the traffic light was against him but also driving at a reckless rate of speed and failing to look to his right to observe traffic approaching from that direction. We cannot say that, upon the facts found, he could not have been held negligent in the respects last mentioned, viz.: speed, or lookout, or both. The same is manifestly true regarding the conclusions as to negligence of the driver of the truck.

A conclusion was also arrived at that the plaintiff was not a guest in the ambulance within §1628 of the General Statutes. We do not regard as sufficient to exclude the plaintiff from classification as a "guest [transported] without payment for such transportation," the finding that although no charge was ever made for transportation of persons in the ambulance, there was some prospect that, out of gratitude for the service rendered him, the plaintiff would later make a donation for the benefit of the ambulance fund. We

infer, however, that the conclusion was not grounded upon the theory that payment by the plaintiff was received or expected, but upon the view, expressed by a subordinate conclusion to that effect, that the transportation was for the "mutual benefit" of both the plaintiff and Griswold Post and for that reason the former was not a guest, under *Kruy* v. *Smith,* 108 Conn. 628, 630, 144 Atl. 304. But, as illustrated in that case, the extent and nature of the reciprocal advantages which will produce this result are not unlimited but are confined to certain definite relations, such as master and servant, and to tangible benefits accruing to the transporter—as in saving time for which he as master pays, facilitation of a servant's work, or the like. The scope of the principle falls short of including so intangible and speculative an element as the possibility of a future voluntary donation, as to the ambulance fund. We hold that there was here no such mutual benefit as would divest the plaintiff of his status as a guest and thereby relieve him from the statutory limitation of his ground of recovery, as such guest, to heedlessness or reckless disregard of the rights of others—not found in the present case.

Therefore, the judgment against the defendant Griswold Post is dependent on the further conclusion that this defendant was a "public carrier" and so within the exception stated in § 1628 of the General Statutes that its provisions "shall not relieve a public carrier or any owner or operator of a motor vehicle, while the same is being demonstrated to a prospective purchaser, of responsibility for any injuries sustained by a passenger being transported by such public carrier or by such owner or operator." The soundness of this conclusion turns upon the meaning of the term "public carrier" as employed in this statute. Section 1548 of the General Statutes provided that "public service . . . vehi-

cles shall include all motor vehicles used for transpor-
tation . . . for hire." The few discoverable judicial
definitions of "public common carrier" or "public car-
rier" appear to contemplate the payment of compen-
sation for the transportation offered to the public.
*Indianapolis Traction & Terminal Co.* v. *Lawson,* 143
Fed. 834, 837, 5 L. R. A. (N. S.) 721; *State* v. *Wash-
ington Tug & Barge Co.,* 140 Wash. 613, 250 Pac. 49;
*New Orleans* v. *Le Blanc,* 139 La. 113, 71 So. 248;
*State ex rel. Public Utilities Commission* v. *Nelson,*
65 Utah, 457, 238 Pac. 237; 4 Words & Phrases (2d
Series) 3. However, as to such carriers, it is generally
held that they are liable, for ordinary negligence, to
passengers being gratuitously transported under a pass
or authorized invitation or permission. See *Indian-
apolis Traction & Terminal Co.* v. *Lawson, supra,* and
cases in note, 5 L. R. A. (N. S.) 721.

Coming to the statute now under consideration, it is
to be noted that as its general application is expressly
limited to persons being transported without payment
therefor, there was no need or occasion for providing
a special exception in favor of passengers being trans-
ported for hire. There is an obvious and substantial
reason, similar to that actuating the imposition of re-
sponsibility in the cases last above referred to, for an
exception as applied to those who hold themselves out
to the general public as affording, and who furnish,
transportation although without payment therefor by
the passengers, and there is a significant analogy be-
tween the situations covered by the provision so con-
strued and that of an automobile dealer demonstrating
a motor vehicle to a prospective customer, which is
the other specified subject of the exception we are dis-
cussing. We adopt this construction of "public car-
rier;" the defendant Post's ambulance is within its
scope and the trial court was correct in so holding.

Consequently, this defendant would be liable to the plaintiff for ordinary negligence on the part of its driver, the conclusion as to which, as we have above stated, remains sufficient to support recovery notwithstanding elimination of the element of entering the intersection against the traffic light.

There is no error.

In this opinion the other judges concurred.