Argued October 4, 1933; reargued January 19; reversed
February 20, 1934

# BUCK v. ICE DELIVERY COMPANY

## (29 P. (2d) 523)

*E. L. McDougal,* of Portland, for appellant.

*Robert F. Maguire,* of Portland, for respondent.

KELLY, J. On February 29, 1931, plaintiff's ambulance was on an emergency call and being driven south on 25th street in Portland, Oregon. Defendant's ice truck was being operated east on Lovejoy street. These streets intersect at right angles. Lovejoy street, at the place where the accident occurred, had been

designated by municipal ordinance as a stop street for traffic proceeding north and south on 25th street, and signs had been erected to that effect. Plaintiff's ambulance was not brought to a complete stop before entering the intersection of Lovejoy and 25th streets and continued on through the intersection resulting in a collision with the defendant's truck and damage to the ambulance.

■ Section 55-704, Oregon Code 1930, which was in effect at the time of the collision in suit, provides:

"Main traveled highways—Designation—The state highway commission, with reference to state highways, and local authorities, with reference to highways under their jurisdictions, are hereby authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto, * * *."

Defendant requested an instruction to the effect that a violation by plaintiff of the foregoing statute and of the terms of the municipal ordinance declaring Lovejoy street to be a stop street, by failing to bring his ambulance to a stop at said intersection, constituted negligence on plaintiff's part. This requested instruction was refused. Defendant duly excepted and thus the single question is presented of whether, at the time of the collision in suit, the operator of plaintiff's ambulance was relieved from the duty to stop at a stop street as prescribed by said ordinance and the statute above quoted.

Plaintiff argues that the law of emergency amends the law of state and municipality, and by virtue of

such amendment his ambulance was not required to stop at a stop street when taking an injured person to a hospital.

Whatever may be said on that question when, as now, the law requires the operators of all other vehicles, upon hearing the sound of the siren of an authorized emergency vehicle, immediately to park their cars free from intersections until such emergency vehicle shall have passed or a police officer otherwise directs, (Sec. 37, Chap. 360, Sess. Laws, 1931, p. 645; *Leete v. Griswold Post No. 79, Am. Leg.*, 114 Conn. 400 (158 Atl. 919)), we must bear in mind that when the collision in suit occurred there was no such requirement.

The case at bar is a most emphatic and impressive illustration of the wisdom of the mandate that such stops should be made. Here we have a case where the required stop was not made and not only was much delay thereby caused to the parties in the ambulance but extensive property damage ensued and human life was greatly imperiled. Just why the great extremity of a patient should be urged as a reason for still further jeopardizing such patient's life by crossing a stop street without first stopping is not clear to the writer. The very obvious moral of the case at bar is that certainty of reaching the place of succor, at least partially assured by observing the stop signs, should not have been sacrificed by unwise haste resulting in frustration.

If, as in the case at bar, failure to observe a stop sign would prevent an emergency vehicle from reaching the place where and when the relief it seeks may be effectively available, certainly the court should not adopt a construction of the law which invites and approves such a disappointing result. That is not all.

Coupled with the disappointment and dismay of the person or persons under the control of the operator of an ambulance in such circumstances, there is also the menace to other travelers, whose property might be destroyed and whose lives might be forfeited, by disregard of the mandate mentioned on the part of the ambulance driver.

■ Plaintiff also urges that the provision of the statute which declares that the statutory speed limitations shall not apply to public or private ambulances when traveling in emergencies (Section 55-1007 (d), Oregon Code 1930), together with the provisions of the statute granting the right of way to ambulances (Section 55-605 and Section 55-702, Oregon Code 1930), should be construed as exempting plaintiff's ambulance from the terms of the ordinance and statute requiring motor vehicles to stop before entering or crossing a main traveled or through highway which has been duly designated as such and at the entrances of which signs have been erected notifying drivers of vehicles to come to a full stop. We are unable to concur in this view: *Lamar & Smith v. Stroud*, (Tex. Civ. App.) 5 S. W. (2d) 824.

In *West v. Jaloff*, 113 Or. 184 (232 P. 642, 36 A. L. R. 1391), this court, speaking through the late Mr. Chief Justice McBRIDE, said:

"Granting the right of way to an ambulance is one thing and granting the right to exceed the statutory speed is another."

We think that granting an exemption from the observance of a statutory mandate to stop at streets duly and legally designated as stop streets is still another thing.

The record discloses that plaintiff violated the ordinance and statute in question and therefore was

guilty of negligence. The trial court should have so instructed the jury.

To the writer it is inconsistent with the invariable rule announced by the adjudications thereon to invoke here a statutory provision abolishing the speed limit as to fire apparatus and giving such appliances the right of way on the streets. That rule has been established by judicial construction: *City of Kansas City v. McDonald,* 60 Kan. 481 (57 P. 123, 45 L. R. A. 429); *State v. Sheppard,* 64 Minn. 287 (67 N. W. 62, 36 L. R. A. 305); *Farley v. New York,* 152 N. Y. 222 (46 N. E. 506, 57 Am. St. Rep. 511); *Toledo Ry. & Light Co. v. Ward,* 25 Ohio Cir. Ct. Rep. 399; *Spellman v. Metropolitan St. Ry. Co.,* 87 Kan. 415 (124 P. 363, Ann. Cas. 1913E, 230); *Dole v. New Orleans R. & Light Co.,* 121 La. 945 (46 So. 929, 19 L. R. A. (N. S.) 623); *Magee v. West End St. Ry. Co.,* 151 Mass. 240 (23 N. E. 1102); *Warren v. Mendenhall,* 77 Minn. 145 (79 N. W. 661).

In *Hanlon v. Milwaukee Electric Ry. & Light Co.,* 118 Wis. 210 (95 N. W. 100), the court, in holding that no indubitable inference of negligence arose from the fact that a fireman gave head to his horses and attempted to make a crossing in front of an approaching electric car, said:

"Among those things which distinguish the conduct of the driver of fire apparatus from other is, primarily, the duty and necessity of great speed. The loss of moments may mean destruction of lives or property. The public purpose which such men and appliances serve would be defeated by the hesitation and caution which does and should characterize the ordinary traveler. To serve this public purpose, the driver must and does seize every opportunity to make expedition. He takes chances, in deference to the imperative necessity for speed, which would be wholly unjustifiable otherwise. These things firemen do. These things they must do. The conclusion seems irresistible, either that

they are consistent with ordinary care under those circumstances or that the ordinarily prudent man cannot hold a position in the fire department.''

To the writer it is equally inappropriate to liken the driver of a private ambulance to a peace officer in pursuit of a felon, whom such officer is duly authorized to arrest. The points of variance are so numerous and those of resemblance so vague' that reference thereto may be permitted.

''Every person must aid an officer in the execution of a warrant, if the officer require his aid and be present and acting in its execution.'' Section 13-2103, Oregon Code 1930.

This well-known provision of the statute, doubtless, had its origin in the statute of hue and cry (13 Edw. I, Chaps. 1 and 2), by which the inhabitants of a hundred were liable for the loss of goods taken unless they produced the robber.

Hue and cry is the old common-law process of pursuing with horn and with voice all felons, and such as have dangerously wounded others. Hue and cry may be raised by constable, private persons or both. 5 C. J., Arrest, 421, Sec. 54.

''If, after notice of intention to arrest the defendant, he either flee or forcibly resist, the officer may use all necessary and proper means to effect the arrest.'' Section 13-2108, Oregon Code 1930.

''The killing of a human being is justifiable when committed by public officers or those acting in their aid and assistance and by their command, * * * (4) When necessarily committed in arresting a person fleeing from justice who has committed a felony.'' Section 14-216, Oregon Code 1930.

''The killing of a human being is also justifiable when committed * * * 3. In the attempt, by lawful ways and means, to arrest a person who has committed a felony.'' Section 14-217, Ibid.

It certainly cannot be claimed that the driver of an ambulance has the right to kill a human being while acting in the line of his very commendable duty to convey the injured and afflicted to a place of succor. Neither is it his right to use force in the line of his duty, and assuredly only the instincts of sympathy and kindliness afford him any expectation of being obeyed when he makes an appeal to bystanders for help.

Firemen and police officers are vested with official discretion which may not be deemed to be abused by violating statutes and ordinances regulating traffic upon the public highways. This is not because of any statutory enactment exempting peace officers and firemen from such rules of the road, but upon the ground of sound public policy.

In a word, the statutes, which plaintiff invokes, were unnecessary as to firemen and peace officers, in the discharge of their duties as such. As to them no different status was created by such statutes than the status which was theirs before the enactment of such law.

The effect of these statutes is simply to abolish the speed limit as to ambulances when traveling in emergencies and to give ambulances the right of way when being operated on official business and sounding an audible signal. It does not, because by the very nature of things it cannot, render a private ambulance similar in purpose or service either to a pursuing peace officer's motor vehicle or to the apparatus of a fire department under the charge of a fireman on the way to a fire.

The sole question involved here is whether, in the absence of a statute exempting ambulances from the duty of observing the ordinance and statute requiring

motor vehicles to stop at through streets, private ambulances are nevertheless absolved from such duty because they are not bound to observe speed regulations and ambulances operated on official business and sounding an audible signal are accorded the right of way.

The case of *Leete v. Griswold Post No. 79 American Legion,* supra, is based upon a provision of the Connecticut statute requiring all other vehicles to stop upon hearing the siren of an emergency vehicle. As stated, we have such a statute now, but did not when the collision in suit occurred. In that case, among other things, the court said:

"Section 1595 includes a requirement for a signal so distinctive and audible as to apprise all other traffic in the vicinity of the impending passage of a vehicle of a nature preferred because of imperative need of rapid and unimpeded progress, and requires conduct on the part of other traffic consistent with that end."

The statute above mentioned, as section 1595, reads thus:

"Section 1595. (a) The driver or operator of an ambulance, while answering a call or taking a patient to a hospital, and the driver or operator of any vehicle used by a fire company or by any officer of a fire company or fire department while on the way to a fire, provided such ambulance or vehicle used by a fire company or an officer thereof shall be equipped with a horn, gong, bell or siren sounding a loud warning, distinctive from warnings sounded by horns, gongs, bells or sirens commonly in use on motor vehicles, shall have the right of way over all other traffic upon any public or private way. (b) The driver or operator of any vehicle other than those described in subsection (a) of this section, shall upon the approach of any vehicle of the kind described therein, immediately drive or operate such vehicle as near as practicable to

the right hand side of the traveled portion of the highway in the direction in which such driver or operator is traveling and *stop such vehicle* until such ambulance or vehicle used by a fire company or an officer thereof shall have passed.''

In determining whether an ordinance, giving ambulances the right of way over all other vehicles, had the effect of rendering nugatory another ordinance fixing a maximum rate of speed, the supreme court of Michigan, speaking through Mr. Chief Justice Champlin, said:

''The ordinance giving the right of way to ambulances * * * has no reference to the speed at which they may be transported.'' People v. Little, 86 Mich. 125 (48 N. W. 693).

We quote from the opinion in that case:

''Respondent in his affidavit for certiorari claims that he had a right to drive 12 miles an hour, and that he was only driving at that rate. That it is reckless to drive at such rate of speed through the streets of a city where many people are passing in carriages and crossing the streets upon foot, is self-evident. It jeopardizes human life. Men, women, and children may be run down, and injured or killed by such vehicles driven at such high rate of speed. It would be bad policy for a city to authorize a rate of speed which would be so liable to cause accidents, for the sake of affording more prompt relief to some one injured by an accident. The public interests do not demand that, in order to afford prompt relief to one person requiring the use of an ambulance other persons may be run down and injured by the fast and reckless rate of speed of the ambulance in going to the assistance of the person injured.'' People v. Little, (supra).

While the question, here involved, which is whether the statute requiring vehicles to stop before crossing through streets is impliedly repealed as to ambulances by the statute giving ambulances the right of way, and abolishing the speed limit as to them, was not

before the Michigan court in the case last cited; it is there clearly indicated as in *West v. Jaloff*, supra, that only such exemptions from the rules of the road as are expressly given to private ambulances, should be recognized and that, unlike fire apparatus on the way to a fire, or a peace officer's vehicle while being used to pursue a felon, private ambulances do not serve the public interest to such an extent that they may be operated in violation of ordinance or statute at the discretion of their drivers.

If the legislature had enacted a statute making ambulances only exempt from special regulations and giving them, while on official business, the right of way, without mentioning fire apparatus or police vehicles, it could have been argued that the legislature impliedly restricted such exemptions to ambulances, and removed them as to the other two classes of vehicles. That is a sufficient reason for mentioning those other vehicles, in the statute actually passed; and, to the mind of the writer, a far more cogent one than attributing an intention to place the three classes of vehicles on a parity and to decree that notwithstanding the constabulary and the fire fighters perform a duty and a service wholly dissimilar to drivers of ambulances, nevertheless because ambulances, fire apparatus and police vehicles are all mentioned in one statute, rights not expressly given by statute are to be accorded by implication.

The judgment of the circuit court is reversed and the cause remanded for such further proceedings as may not be inconsistent herewith.

RAND, C. J., BEAN, ROSSMAN and CAMPBELL, JJ., concur.

BAILEY, J., specially concurring.

BELT, J., dissenting in opinion.

BAILEY, J. (specially concurring). In endeavoring to ascertain the intention of the legislature as to whether or not § 55-704, Oregon Code 1930, required ambulances such as the one involved in this case to come to a full stop before entering or crossing a through street, it will be enlightening to review the numerous changes made in the law relating to the rules of the road, before taking up and discussing the several sections of the 1929 enactment relied upon by the litigants before us.

Chapter 371, § 2, subdivision 21, Laws 1921, provided that:

"Patrol wagons, ambulances, fire patrols, fire engines and fire apparatus shall, in all cases, with due regard to the safety of the public, have right of way, all provisions of this act to the contrary notwithstanding; but this act shall not protect the driver of any such vehicle from consequences resulting from the arbitrary exercise of this right or for injuries wilfully inflicted."

This provision of the 1921 law was carried into the 1925 law unchanged: chapter 165, § 1, subdivision 21 of § 2 as re-enacted. There was also incorporated in the 1925 laws, in subdivision 16 of the same section as re-enacted, relating to the speed of motor vehicles, the following qualifying clause:

"Provided, that all fire vehicles and police vehicles when under the operation and control of any incorporated city in the state of Oregon, and all ambulances, shall have, in all cases, with due regard to the safety of the public, the right of way over all other vehicles, and shall not be subject to the limitation of speed in this section provided."

It will be noticed that under the 1921 law and its re-enactment and amendment in 1925 patrol wagons,

ambulances, fire patrols, fire engines and fire apparatus were given the right of way in all instances, with certain qualifications as to due regard to the safety of the public and liability on the part of the driver for consequences resulting from his arbitrary exercise of the right granted by the law.

In 1927, however, the legislature must have considered the 1921 law as re-enacted and amended in 1925, relative to the right of way of certain designated vehicles, too broad, and subdivision 21 of § 2, chapter 371, Laws 1921, as re-enacted in 1925, was further amended by chapter 217, Laws 1927. The change then made was carried into the 1929 amendment of the same section, which is now § 55-605, Oregon Code 1930, reading as follows:

"The driver of a vehicle upon a highway shall yield the right of way to police, traffic and fire department vehicles and ambulances when the latter are operated upon official business and the drivers thereof sound audible signal by bell, siren or exhaust whistle. This provision shall not operate to relieve the driver of a police, traffic or fire department vehicle or ambulance from the duty to drive with due regard for the safety of all persons using the highway nor shall it protect the driver of any such vehicle from the consequence of an arbitrary exercise of such right of way."

Subdivision 16 of the 1925 amending statute, granting to certain vehicles, including ambulances, the right of way "in all cases" and exempting them from the speed limitation, was amended in 1927 (chapter 217, Laws 1927) so as to exempt such vehicles from the speed limitation only and to eliminate the special privilege as to right of way set forth in subdivision 16 of the 1925 act. This 1927 amendment was incorporated in the 1929 laws unchanged (chapter 186, p.

180, Laws 1929) and is codified as § 55-1007, Oregon Code 1930, reading as follows:

"The speed limitations set forth in this act shall not apply to vehicles when operated with due regard for safety under the direction of the police, sheriff or traffic officer in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to public or private ambulances when traveling in emergencies. This exemption shall not, however, protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others."

Section 55-605 of the code was in full force and effect at the time of the collision between plaintiff's ambulance and defendant's ice truck on February 28, 1931. By the express wording of that section ambulances are granted the right of way over private vehicles only in those instances in which the ambulance is being operated on *official business*. There is no evidence in the record before us indicating that plaintiff's ambulance was, at the time of the accident, being operated on other than private business of its owner. Had the legislature intended to exempt the drivers of private ambulances from observing the rules of the road relative to the right of way of vehicles at intersections, it would not have amended the law as above indicated. Under the 1921 and 1925 laws ambulances were granted the right of way "in all cases", while under the law in effect at the time of the accident drivers of private vehicles were required to yield the right of way to ambulances only in the event that the latter were being operated on official business.

Proof of the intention of the 1927 legislature to distinguish between the rights of ambulances and those of police, traffic and fire department vehicles at street

intersections is found in subdivision (a) of § 55-606, Oregon Code 1930 (subdivision 5 (a) of § 2, chapter 371, Laws 1921, as amended by chapter 217, Laws 1927), reading as follows:

"Upon the approach of any police, traffic officer or fire department vehicle giving audible signal by bell, siren or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position as near as possible and parallel to the right-hand edge or curb of the highway, *clear of any intersection of highways,* and shall stop and remain in such position, unless otherwise directed by a police or traffic officer, until the police or fire department vehicle shall have passed."

It will be noted that ambulances are not referred to in any way in the foregoing section, either expressly or by implication. The legislature has, by the foregoing statute, extended certain rights or exemptions to vehicles of the police and fire departments which are not granted to ambulances. It might well be reasoned from the last above quoted section that on the approach of vehicles of the fire or police department all other vehicles, whether on through streets or elsewhere, must at once stop "clear of any intersection of highways", so as to permit free and uninterrupted progress of such designated vehicles. This line of reasoning would be more logical than to assume that the provision exempting ambulances from speed limitations necessarily confers on them the right of way at intersections. That the legislature did not in all instances intend to include ambulances in the same category with police and fire department vehicles is apparent from the wording of § 55-606. If police and fire department vehicles were not intended to have the right of way at all intersections, why did the legislature use language clearly indicating that intention?

Section 55-1007, Oregon Code 1930, specifies the rate of speed at which vehicles may travel, and subdivision (d) of that section merely provides that the speed limit named in the act shall not apply to vehicles when operated under the direction of the police, sheriff or traffic officer in pursuit or apprehension of violators of the law, or to fire department or fire patrol vehicles when traveling in response to a fire alarm, or to public or private ambulances when traveling in emergencies. This subdivision refers only to rate of speed and has nothing to do with the right of way of vehicles. Subdivision (d) of § 55-1007 is closely connected with those parts of the 1927 and 1929 acts which refer to the speed of motor vehicles. It does not in any way refer to the right of way at street intersections. As already pointed out, this subsection was an amendment of a subsection in the 1925 act which contained an express provision exempting ambulances from the speed limitations and granted them the right of way in all cases. The provision relating to the right of way was eliminated in 1927 from the subsection of the 1925 act, thus clearly indicating that it was not intended that an exemption from the speed regulation should confer upon ambulances the right of way at intersections.

Whether or not the law has, since the accident referred to in this case, been so amended as to grant to drivers of ambulances while being operated as was plaintiff's ambulance exemption from the duty of stopping before entering or crossing certain designated streets or highways, it is not necessary or proper to decide at this time. It may be observed, however, that the legislature has granted to authorized emergency vehicles certain rights and exempted such vehicles from certain duties. Authorized emergency vehicles

are defined by the 1931 act (chapter 360, Oregon Laws, 1931) as follows:

"Vehicles of the fire department, fire patrol, police vehicles and such ambulances and emergency vehicles of municipal departments or public service corporations as are designated or authorized by the secretary of state or an authorized officer."

Reverting to the law as it existed at the time of the accident in this case, we find that there are only two sections of the traffic law of this state then in existence which might appear to have any bearing on the case before us, to wit: § 55-605 and § 55-606, subdivision (a), Oregon Code 1930. In the first-mentioned section the ambulance would have to be on official business. By § 55-606 subdivision (a), ambulances are not mentioned and there is nothing in the language there used to indicate that the legislature intended to include ambulances.

It is often just as important for a physician or a surgeon to exceed the speed limit and disregard traffic regulations as for ambulances to do so. In rushing to an accident or to a residence where his presence is needed at once, any delay on the part of the doctor might result in dire consequences. No one, however, would contend that under the law that existed at the time of the accident here involved a doctor could disregard all traffic regulations and, if injured in so doing, recover damages against one who was rightfully in an intersection. The oft-repeated maxim that necessity knows no law might be a sufficient defense to a criminal prosecution for the violation of some law, but would be of no avail to the violator of the law in an attempt to recover damages from an innocent bystander.

It follows that the trial court erred in refusing to give defendant's requested instruction to the effect that failure on the part of the driver of plaintiff's ambulance to come to a stop before entering or crossing Lovejoy street, a legally designated through street, in violation of § 55-704, Oregon Code 1930, constituted negligence on the part of the plaintiff.

BELT, J. (dissenting). This action to recover damages for personal injuries arose out of a collision between an ambulance and an ice truck at the intersection of Lovejoy and 25th streets in the city of Portland. With the siren continually sounding, the ambulance, on an emergency case, was proceeding south on 25th street which intersects Lovejoy at right angles. The ice truck was being driven east on Lovejoy street which had been designated by city ordinance as a through street. It is conceded that the ambulance did not come to a complete stop before entering the intersection, although the stop sign was plainly visible. The case was submitted to a jury and a verdict was returned in favor of the plaintiff. From the judgment entered thereon, the defendant company, operator of the ice truck, appeals.

The sole question presented is whether, under the Oregon motor vehicle act in effect at the time of the accident, it was negligence per se for the driver of the ambulance to fail to bring such emergency vehicle to a stop before proceeding into the street intersection. The appellant company contends that such conduct on the part of the driver of the ambulance amounted to contributory negligence as a matter of law and that, in compliance with its request, the court should have so instructed the jury.

Appellant relies on section 55-704, Oregon Code 1930, which provides:

"The state highway commission, with reference to state highways, and local authorities, with reference to highways under their jurisdictions, are hereby authorized to designate main-traveled or through highways by erecting at the entrances thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, and whenever any such signs have been so erected, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto * * *."

It is clear that, if we look solely to the plain and unambiguous language of the above section of the statute, the contention of appellant must be upheld. However, plaintiff asserts that, in order to determine the legislative intent, such section must be considered in the light of other sections of the act regulating the operation of emergency vehicles. Turning to section 55-1007 (d), Oregon Code 1930, we find that speed limitations applicable to motor vehicles generally do not apply "to vehicles when operated with due regard for safety under the direction of the police, sheriff or traffic officer in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, *nor to public or private ambulances when traveling in emergencies. * * *.*" This section provides further, however, that the exemption from speed limitations shall not relieve the driver of emergency vehicles "from the consequences of a reckless disregard of the safety of others". Attention is also directed by respondent to that section of the Oregon motor vehicle act (§ 55-605, Oregon Code 1930) granting to "Police, traffic and fire department vehicles and ambulances"

the right of way when "operated upon official business and the drivers thereof sound audible signal by bell, siren or exhaust whistle". The legislature, however, was careful to provide in such section granting the right of way to emergency vehicles that they must be driven with due regard for the rights of others using the highway.

It is apparent from the above legislative enactments that the progress of emergency vehicles, when engaged in the business for which they are intended, should not be impeded by the rules and regulations applicable to general vehicular traffic. Since fire engines, police vehicles and ambulances are included in the same sections of the statute granting to them the right of way and exempting them from speed regulations, it logically follows that the same rules should apply to each. If this court should hold that an ambulance must come to a full stop before entering a through street intersection, likewise a fire engine stationed in the southern part of the city, in responding to a general alarm to a fire in the northern part of the city, would be obliged to come to a complete stop at every through street.

It would also create an anomalous situation, to say the least, to hold that a police officer in hot pursuit of a bank robber—who knows no law—is obliged to bring his automobile to a stop. We apprehend that the legislature intended no such dire consequences. Indeed, counsel for the defendant company concedes "that there are times when the requirement compelling police cars and fire apparatus to come to a full stop upon entering a through street is an absurd requirement" but argues that the fault lies with the legislature and that it is not within the province of the court to refuse

to give effect to the plain language of the statute requiring all vehicles to stop.

If the general traffic rules are applicable in the instant case, the ice truck would have the right of way upon approaching the intersection at approximately the same time as the ambulance. However, we are confronted with the specific statutory provision conferring the right of way upon ambulances in emergency cases. Hence, if the ambulance is required by virtue of section 55-704, Oregon Code 1930, to stop at such street intersections, the effect of such requirement would be to abrogate section 55-605, Oregon Code 1930, granting the right of way to emergency vehicles. Furthermore, if section 55-704, Oregon Code 1930, be held applicable to emergency vehicles, section 55-1007 (d), Oregon Code 1930, exempting such vehicles from speed limitations, will be rendered nugatory. Under such circumstances, it is the duty of the court to reconcile these various statutory provisions to the end that the intent of the legislature that the progress of emergency vehicles shall not be impeded be given effect. We conclude that, when the motor vehicle act is considered in its entirety, it seems clear that it was not the legislative intent to make section 55-704, Oregon Code 1930, applicable to emergency vehicles, even though the literal wording of such section would embrace them.

In the recent case of *Leete v. Griswold Post No. 79, American Legion et al.,* 114 Conn. 400 (158 Atl. 919), it was held that the statute governing movement of traffic at intersections where traffic signals were installed did not repeal a statute granting right of way to ambulances and fire apparatus. In this case the ambulance entered the intersection against the traffic light and collided with a truck being driven on a through street. The court, while not absolving the

driver of an ambulance from the duty of exercising reasonable care under the circumstances, concluded that, while acting on emergency cases, he is exempt from compliance with traffic light signals. It was said:

"One has but to contemplate the necessary result of compliance by fire apparatus and ambulances with all traffic light signals and traffic regulations to appreciate the need and purpose of such an exception in their favor as this statute provides. We hold, therefore, that this exception obtains, the facts bring the ambulance within its protection, and the fact that the traffic light was against it did not, of itself, render negligent the act of its driver in traversing the intersection."

For closely analogous cases, see *Gaines v. Taylor* (Ind.), 185 N. E. 297, and *Ferraro v. Earle,* 105 Vt. 243 (164 Atl. 886). In the latter case the court held that the mere fact that the emergency vehicle entered the intersection against the stop light did not of itself constitute negligence. True, this case concerns the operation of a fire truck, but we see no difference in principle since, under the motor vehicle act of this state, the three classes of emergency vehicles are governed by the same traffic rules and regulations. *Lamar & Smith v. Stroud* (Tex.), 5 S. W. (2d.) 824, is contrary to the conclusion we have reached and supports the theory of appellant. It is believed, however, that the latter case is not a sound declaration of the law.

It is not to be understood that, because emergency vehicles are exempted from speed limitations and are given the right of way, the drivers thereof are privileged to throw discretion to the winds. The fundamental rule that care shall be commensurate with the danger involved still prevails. Notwithstanding such emergency vehicles are not required to stop before

entering a through street, it does not follow that they may not be guilty of negligence in driving through street intersections. This is ordinarily a question, however, under all the facts and circumstances, for the jury to determine, and not for the court to declare as a matter of law.

Finding no error in the refusal of the trial court to instruct the jury that the failure of the driver of the ambulance to stop in itself constituted negligence, it follows that the judgment should be affirmed.