JOSEPH AUDIA, P.P.A.

vs.

GUIDO DEANGELIS, ET AL.

Superior Court        Litchfield County        File #8633

Present:   Hon. ALFRED C. BALDWIN, Judge.

Wall. Wall & Wall,            Attorneys for the Plaintiff.

Mascolo, McKnight & Dauch, Attorneys for the Defendant.

MEMORANDUM FILED OCTOBER 28, 1935.

BALDWIN, J. For the purpose of taking this case out of the provisions of the Guest Statute the plaintiff alleged in paragraph 2 of his complaint:

"At said time and place the plaintiff, Joseph Audia, was in said automobile, said transportation of the plaintiff being for the mutual benefit of the plaintiff and the defendant."

Upon the plaintiff's resting his case, defendants moved for a non-suit.

It had appeared in evidence that the defendant, Alfred DeAngelis, was engaged in the retail grocery business, and used in that business for the delivery of merchandise, a small automobile truck and that the defendant Guido, who was a brother of Alfred, worked for Alfred and made deliveries of merchandise, using the truck; that on occasions when going out to make deliveries Guido had taken the plaintiff, who was a bright, good appearing and attractive boy of thirteen or fourteen years of age, and who lived across the street from Alfred's store, with him in the truck, and that on some of these occasions the plaintiff would deliver to a customer the merchandise which Guido had upon the truck upon such customer's order; that the occasions when plaintiff went with Guido were more frequent in the summer when school was not in session; that when school was in session he might go sometimes after school and he might go sometimes on Saturdays; that on Saturday, November 17, 1934, Guido came to the truck which was parked in front of plaintiff's home and near which plaintiff was standing and getting in asked plaintiff if he wished to go with him to which plaintiff replied, "Sure", and entered the truck. They drove a short distance to another store and Guido asked plaintiff to go into that store to purchase some tapioca, giving him the necessary cash for the purchase. Plaintiff, as requested by Guido, went into the store and returned to and entered the truck having been unable to make the purchase. They drove on entering very shortly, East Main Street in Torrington from School Street.

East Main Street runs practically east and west. School Street intersects East Main Street from the northeasterly at a rather sharp angle formed by the easterly side of School Street and the westerly side of East Main Street. East Elm Street intersects East Main Street from the northwesterly

and School Street intersects East Elm Street so close to the intersection of East Elm with East Main that the intersection of East Elm, East Main and School Street are, in part, common to each street.

A traffic sign having the words "Thru Traffic Stop" thereon, placed by a police officer of Torrington pursuant to direction of the chief of police, is located at the curb just northerly of the intersection of the crosswalk with the sidewalk on the northerly side of East Main Street and the easterly side of School Street. This traffic sign faced traffic approaching East Main Street from School Street.

Another like traffic sign was likewise placed on the westerly side of East Elm Street back about forty-eight feet in a direct line from the crosswalk referred to and so placed that it faced traffic approaching East Main Street from East Elm Street.

It did not appear that these traffic signs were so located pursuant to any ordinance or by law adopted by any authority.

As stated, Guido was entering East Main Street from School Street, having passed through the intersection of School and East Elm Streets, and was some six to twenty feet west on East Main Street of the crosswalk crossing East Main Street, which is well westerly of the intersection, his left wheels being one and one-half feet to the left of the center line of East Main Street in the direction in which he was proceeding when he was in collision with an Essex automobile being driven easterly on East Main Street by one Bilodiau.

Bilodiau testified that the defendant Guido "must have been going 30 miles per hour", and that he, Bilodiau, was going 30 miles per hour.

The left forward wheels and fenders of these cars collided and the Bilodiau car was scraped and jammed along its left side and the left running board was torn off and the left rear fender damaged and there were other injuries resulting to his car. It proceeded on a distance of thirty-seven feet, leaving some tire marks on the surface of the road and came in collision with a car parked on the southerly side of East Main Street.

The DeAngelis truck, although some four or five hundred

pounds heavier than the Bilodiau car, was forced backwards and somewhat to its right some three to six feet, leaving a tire mark of this length made by the left forward tire.

These physical facts, the DeAngelis truck being well on its right hand side of the road; the truck being some four to five hundred pounds heavier than the car with which it was in collision and being forced backwards as it concededly was; the Bilodiau car receiving the damages it received and proceeding on the distance it proceeded, leaving tire marks and then stopping in collision with a parked car, indicates very strongly that the truck was not being operated as Bilo-diau said—"must have been going thirty miles per hour"—but was proceeding much more slowly in order to have been stopped and forced backwards by a much lighter body—the Bilodiau Essex—while the Bilodiau car, being much lighter, after hitting the truck with the results referred to, continued on as described. East Main is approximately thirty-six ft. wide.

Upon plaintiff resting his case defendants moved for a non-suit.

These facts appearing in the plaintiff's case, with the lack of any evidence to support the allegations of mutual benefit of the plaintiff as alleged in the second paragraph of the complaint, plus plaintiff's claim upon argument on the motion for a non-suit that he was transported under no agreement nor under any promise or expectation of payment, but that under the circumstances it was a benefit in that when he delivered a parcel it was a saving of time for the defendant Guido for which plaintiff might get some reward, although it did not appear what such reward might be nor that the defendant Alfred knew of plaintiff riding with Guido, I felt, strongly, that defendants were entitled to have their motion granted on the two grounds urged—that the defendants were not negligent and that there was no substantial or tangible benefit to either of the defendants or to the plaintiff. I re-solved, however, to let the case go to the jury with the ex-pectation that its verdict would finally and correctly terminate the case and overruled the motion. The defendants there-upon presented their defense in which it appeared that Guido, in the operation of the truck, had stopped at the stop sign and was proceeding slowly when the collision occurred. He, Guido, was an honest and truthful witness, and the physical facts were corroborative of his testimony.

Upon the defense resting plaintiff was called to the stand and permitted to testify that Guido had on occasions taken him to moving pictures and had given him candy and fruit— an apple. This was claimed to be offered for the purpose of establishing a basis from which the jury could infer a benefit to the plaintiff for the transportation. It was objected to on the ground it was not rebuttal.

Plaintiff received two cuts upon the forehead from broken glass, one cut leaving a scar about one inch long, crescent in shape, in the middle of the forehead over the bridge of the nose, the other cut leaving a scar one and one-half inches long running down the forehead through the eyebrow and into the upper portion of the eyelid. These scars, while noticeable and permanent, are not particularly noticeable. His recovery was good, the scars being the only permanent results.

The verdict returned was for the plaintiff to recover from the defendants $750.00 damages.

Aside from the absence of negligence of the defendants in the case, and the very clear negligence of Bilodiau causing the accident, I fail to discover wherein he was "being transported for the mutual benefit of himself and the driver or owner of the car." **Bree vs. Lamb, 120 Conn., at page 3.**

"If the passenger in the car is enjoying the hospitality of the driver or owner without making any return therefor or conferring any benefit other than the pleasure of his company, he is a guest. If he is being transported for the mutual benefit of himself and the driver or owner of the car, he is not a guest. The benefit must be a tangible one growing out of a definite relationship. It may be incidental to such relationship. It need not be a consideration agreed upon for the transportation."

**Bree vs. Lamb, supra; Chaplowe vs. Powsner, 119 Conn. 188; Bradley vs. Clarke, 118 Conn. 641; Leete vs. Griswold Post, 114 Conn. 400.**

It would seem that the benefit to the plaintiff growing out of the transportation was too intangible and too indefinite to bring the case within the rule laid down in the cases cited. It would seem also that the benefit to either defendant was likewise too intangible and too indefinite. It would seem that there was no definite relationship existing between the parties

upon which any claimed benefit could be based, nor could the claimed benefit be incidental to any such relationship since there was no definite relationship.

This bright, good appearing boy was being transported for the pleasure of his company and for the purpose of being given the pleasure of a ride out of the hospitable motives of Guido. He was a guest. He was injured through the negligence of Bilodiau and not the defendants. His attractiveness and injuries won our sympathy and interest. It led the jury to return a verdict, not as it seems to me, to be in accord with our law or the facts.

Under the circumstances the verdict is set aside.