193 A.2d 83 (1963)
William G. MATTHEWS and David C. Harrison Post No. 14, American Legion, Inc., a corporation of the state of Delaware, Defendants Below, Appellants and Cross-Appellees,
v.
Donald H. BRYERTON and Ethel B. Bryerton.
Supreme Court of Delaware.
July 10, 1963.
F. Alton Tybout, Wilmington, for defendants below, appellants and cross-appellees.
*85 Joseph H. Geoghegan, of Berl, Potter & Anderson, and Donald C. Taylor and H. Alfred Tarrant, Jr., of Cooch & Taylor, Wilmington, for plaintiffs below, appellees and cross-appellants.
TERRY, Chief Justice, and WOLCOTT and CAREY, JJ., sitting.
*84 CAREY, Justice.
This case arose from a collision between an automobile driven by Donald H. Bryerton, herein called the plaintiff, and a private ambulance owned by the American Legion Post and driven by William G. Matthews, herein called the defendant. The Court below entered summary judgment against the plaintiff on his claim, and in his favor on the counterclaim, upon a finding of negligence proximately causing the accident on the part of both drivers. These cross-appeals attack that finding. The fundamental question, presented to this Court for the first time, is whether an ambulance driver is excused under certain conditions from observing the provisions of 21 Del.C. § 4143 and § 4142(c) (1), hereinafter quoted, requiring vehicles to stop at intersections controlled by stop signs or flashing red traffic lights.
The facts are these: the collision occurred in the early afternoon of April 17, 1960 at the intersection of State Route 896 and County Route 25. The weather was clear and the road was dry. Plaintiff, accompanied by his wife, was driving south on Route 896. Defendant was traveling east on Route 25 carrying two injured persons to the hospital. No doctor had seen those persons and no one knew how seriously they were injured; there was some reason to think that one might have severe injuries. Several special lights were lighted on the ambulance, including a revolving light on the top. The siren started blowing a distance of two or three telephone poles west of the intersection and about the same time, defendant reduced his speed to 25 miles per hour, the posted speed limit. Because of some buildings, gas pumps and trees, each driver's possible view of the other was limited, the estimates thereof varying from 50 to 100 feet. Precisely when Matthews first actually saw the plaintiff is unknown, because he remembers nothing about the accident.
The plaintiff was traveling about 35 miles per hour, the posted speed limit on Route 896 being 50 miles per hour. He and his wife testified that his car windows were open and his radio was playing. Neither he nor his wife saw the ambulance or its lights or heard the siren until they actually entered the intersection. He says he first looked to his right when he was some distance back, where he had a partial view of Route 25 between some trees. He says he again looked to his right when he was about 50 feet from the intersection. He first actually saw the ambulance when it was less than 25 feet from him. The impact between the two cars occurred near the center of the intersection. The investigating officer found no skid marks leading to either car.
The intersection is controlled by a blinking light, yellow facing north from which direction plaintiff approached and red facing west from which direction defendant approached. There was also a stop sign against traffic coming from the west on Route 25.
The Court below found the plaintiff guilty of contributory negligence in failing to keep a proper lookout. It also found the defendant guilty of contributory negligence in failing to stop according to the mandate of § 4143 and § 4142(c) (1).
Consideration of the respective rights and duties of the drivers requires a discussion of several "rules of the road". These are the following:
"§ 4143. (a) Whenever a stop sign, notifying drivers to come to a full stop, has been erected by the proper State or *86 local authorities as provided in this title, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto.
"(b) The operator of any vehicle who has come to a full stop as provided in subsection (a) of this section, shall not enter into, upon or across, such highway or street until such movement can be made in safety".
"§ 4142. (c) Whenever flashing red or yellow signals are used at the intersection of two highways, they shall require obedience by vehicular traffic as follows 
"(1) When a red lens is illuminated by rapid intermittent flashes, drivers of vehicles approaching the flashing signal shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign as contained in subsection (b) of section 4143 of this title;
"(2) When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signals only with caution."
"§ 4139. (b) The driver of a vehicle upon a highway shall yield the right of way to police and fire department vehicles and public and private ambulances, when they are operated upon official business and the drivers thereof sound audible signal by bell, siren or exhaust whistle. This provision shall not operate to relieve the driver of a police or fire department vehicle or an ambulance from the duty to drive with due regard for the safety of all persons using the highway and it shall not protect the driver of any such vehicle from the consequences of an arbitrary exercise of such right of way."
"§ 4141. Upon the approach of any police or fire department vehicle or public or private ambulance giving audible signal by bell, siren or exhaust whistle, the driver of every other vehicle shall immediately drive such vehicle to a position as near as possible and parallel to the right-hand edge or curb of the highway, clear of any intersection of highways, and shall stop and remain in such position, unless otherwise directed by a police or traffic officer, until the police or fire department vehicle or the ambulance has passed."
All these sections pertain to the question of which driver has the "right of way", a term defined in 21 Del.C. § 101 as "the privilege of the immediate use of the highway." Obviously, in interpreting the various right of way rules, we must presume that the Legislature intended to lay down rules of conduct which are consistent with one another, and we must consider the above quoted sections with that presumption in mind.
Parenthetically, it is to be noted that the Legislature has made no distinction between police and fire department vehicles, on the one hand, and public and private ambulances, on the other, either in these quoted right of way sections or in § 4129 which exempts them from certain speed limitations. Certainly, the Legislature has the power to settle upon a public policy of treating them alike and the Courts may not renounce that public policy by distinguishing between them. We, therefore, must ignore any argument based upon any such distinction.
The argument is made that § 4142 and § 4143 are applicable to all vehicles without exception; that if the Legislature had intended any exception it would have expressly said so; and that in the absence of such express exception the Court cannot create one. It is further argued that the provisions of § 4139(b) apply only to uncontrolled intersections covered by § 4138.
*87 It is to be noted that, notwithstanding the headnote or catchline (which is not part of the law, 1 Del.C. § 306), the language of § 4139(b) is not that of an exception, but is language expressly imposing an obligation upon all drivers to yield the right of way to the emergency vehicle under the prescribed conditions. Moreover, § 4141 goes even further and directs all drivers to pull to the side of the highway upon the approach of such emergency vehicle and remain stopped until it has passed. To read those sections as plaintiff suggests is to insert an exception into them. This leads to the necessity of saying one of two things: (a) that all drivers must give way to emergency vehicles in the stated situations, and § 4139(b) and § 4141 are accordingly exceptions to § 4142 and § 4143; or (b) that all drivers have the right of way over emergency vehicles at controlled intersections, and § 4142 and § 4143 are accordingly exceptions to the other two sections.
We believe that the legislative will in this instance is best found by reading the statute as a whole, rather than considering the various sections as individual enactments. 2 Sutherland on Statutory Construction 338. The Legislature was attempting to set up a complete harmonious system of traffic controls. The statute places these emergency vehicles in a special privileged category, and lays down specific rules as to them in contrast to general rules for other traffic. In view of the nature of those special vehicles and the manner of setting out their special privilege, we think the specific rules were intended to take precedence over general traffic regulations. In our opinion, this is the more reasonable view.
We are impressed by the reasoning in the case of Leete v. Griswold Post No. 79, 114 Conn. 400, 158 A. 919. It was there pointed out that these various sections of the Motor Vehicle Law, dealing with "the privilege of the immediate use of the highway" may and should be so construed as to give full effect to all of them within their respective fields. The traffic-signal and stop-sign sections apply to all vehicles generally, but are subject to those specific rules governing enumerated emergency vehicles under the conditions contained therein.[*] We do not pause to discuss further authorities which have been cited for or against our holding because we are convinced that this was the legislative intent.
It follows from what has been said that the defendant was not guilty of negligence simply by disobeying the stop sign and the blinking signal light. The facts are clear that he was operating the ambulance on official business and was sounding an audible signal by siren. He was, of course, bound to drive with due regard for the safety of all persons using the highway, and not to use his right of way arbitrarily. Whether he violated that duty is a question not passed upon by the trial Court and we express no opinion thereon.
We agree, however, that the Court below properly entered judgment against the plaintiff on his claim because we are satisfied that proper care on his part would have avoided the accident. The existence of a yellow blinking light called for a greater degree of watchfulness than usual. Carnes v. Winslow, Del., 182 A.2d 19. If his vision was partially blocked by obstructions, he was obliged to be even more watchful than usual. 2 Blashfield on Automobile Law 372. The burden was, of course, upon him to present evidence of any legal excuse there might be for disobeying § 4139(b) and § 4141. His only excuse is that he neither saw the ambulance *88 nor heard its siren in time. No satisfactory reason appears for his failure to hear the siren which was heard by several persons in the immediate vicinity. If his radio drowned out the sound of the siren, that fact furnishes no legal excuse. In short, there is nothing in the record to justify a jury verdict in his favor on his affirmative claim. It follows that appellants are entitled to judgment on their counterclaims, unless Matthews was contributorily negligent in the respect mentioned above.
The decision of the Superior Court with reference to the plaintiff's claim is affirmed, but as to defendants' counterclaim, it is reversed and remanded, in order that the issue of Matthews' contributory negligence may be determined.
NOTES
[*] We point out that Levy Court, etc. v. Yellow Taxi, 6 Terry 470, 45 Del. 470, 75 A.2d 421, has no bearing on the present question; the only point there raised and decided was that the particular ambulance was not an "authorized emergency vehicle" under a City ordinance and was therefore not exempt from obeying the traffic ordinances of the City. The State statute was not even mentioned.