THE STAFFORD SPRINGS STREET RAILWAY COMPANY *vs.* THE MIDDLE RIVER MANUFACTURING COMPANY ET AL.

THE STAFFORD SPRINGS STREET RAILWAY COMPANY *vs.* THE EASTERN CONNECTICUT REALTY COMPANY.

First Judicial District, Hartford, May Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

The charter of a street-railway company authorized it to take land in the manner provided for taking land for steam railroad purposes. *Held* that this referred to the prescribed methods or course of procedure, and did not make every statute concerning the location and construction of steam railroads applicable to street railways.

General Statutes, § 3681, requiring a steam railroad company to deposit a sum equal to $11 for each mile of its proposed road in this State, before asking the railroad commissioners for their approval of its location, does not apply to electric street-railway companies.

The management of a corporation cannot be paralyzed by every absence of a director from its place of business or from the State at a time when a meeting of the board seems necessary. Notice to a majority, in such a case, if they, being all that can be reached, proceed to hold the meeting, will, in the absence of any by-law to the

contrary, support their action; at least if, as in the present instance, the others subsequently sign and file a waiver of notice, and the corporation acquiesces in what was done by making it the basis of a claim of legal right.

Having made unsuccessful attempts to purchase the land in question prior to the approval of its location, a street-railway company is not bound to renew the attempt after such approval has been given.

Evidence that a certain person was treasurer of a Connecticut corporation in 1903, since which it had failed to file any annual statement giving the names of its officers as required by statute, authorizes the inference that he was its treasurer up to the time of the hearing two or three years later.

Under General Statutes, § 3687, an application for the appointment of appraisers to estimate the damages arising to a landowner from the taking of his land for railroad purposes, cannot be sustained without proof that the applicant had been unable to obtain it by agreement with the owner.

Proceedings upon such an application are, however, summary and comparatively informal, and are not governed in respect to pleadings and evidence by the strict rules prescribed for ordinary actions at common law; and the judge is therefore at liberty to receive any evidence which is fairly calculated to aid him in coming to a just conclusion. Accordingly, evidence that the applicant had negotiated unsuccessfully for the purchase of the land in question with the treasurer of the defendant company, who claimed to represent it, is admissible, although there was no evidence as to what powers such treasurer possessed; it being competent for the judge to assume that his powers were adequate to the negotiation which, as such officer, he undertook to conduct on behalf of the defendant.

In hearings of this nature the rule excluding any but the best evidence need not be inflexibly applied; and therefore it is not error to permit a witness to state in whose name a draft contract for the sale of the land was drawn, although the document itself was not produced nor its absence accounted for.

Evidence that the person who was alleged to have acted for the defendant as its treasurer had filed a list of the defendant's taxable property with the town collector shortly before the commencement of the condemnation proceedings, is admissible as tending to fortify the presumption that he was then treasurer of the defendant company.

Argued May 14th—decided June 5th, 1907.

APPLICATIONS for the appointment of appraisers to estimate damages arising from the taking of land for railway purposes, brought to and heard by the *Hon. Joel H. Reed*, a judge of the Superior Court; a demurrer to each appli-

cation was overruled, after which the facts were found and judgment rendered for the plaintiff, from which the defendants appealed. *No error in either case.*

*Donald G. Perkins,* with whom was *Robert H. Fisk,* for the appellants (defendants).

*Benjamin I. Spock,* for the appellee (plaintiff).

BALDWIN, C. J. Neither application contained any allegation that the company preferring it had made a deposit with the treasurer of the State of a sum equal to $11 for each mile of its proposed road in this State. Demurrers on this ground were overruled, and averments in the answers that no such deposit had been made were held insufficient. The charter of the company authorizes it to take land "in the same manner as provided for taking lands for steam railroad purposes." 13 Special Laws, p. 919, § 11. In chapter 213 of the General Statutes, the title of which is "Location and Construction of Steam Railroads," it is provided (§ 3680) that every railroad company may take, with the approval of the railroad commissioners, as much real estate as may be necessary for the proper construction and security of its road, and § 3681 reads as follows : "Every such company, before applying to the commissioners for their approval of the location of its road, shall deposit with the state treasurer a sum equal to eleven dollars for each mile of its proposed road in this state. And the comptroller shall include such company among the several railroad companies in his next annual apportionment of the office expenses and salaries of said commissioners, estimating the length of its main track or tracks as equal to the proposed length of its road ; and said treasurer shall deduct from said deposit the amount so apportioned to such company, and return the remainder to the treasurer of such company." General Statutes, § 3882, directs that in the apportionment of the office expenses and salaries of the railroad commissioners among the several

companies all companies "operating railroads and street railways in this state" shall be included. General Statutes, § 1, provides that "the phrase ' railroad company ' shall be construed to mean and include all corporations, trustees, receivers, or other persons, that lay out, construct, maintain, or operate a railroad operated by steam power, unless such meaning would be repugnant to the context or to the manifest intention of the general assembly." The applicant's charter (§ 2) excludes the use of steam power upon its railway. General Statutes, § 2432, declares that "the existing statutes with regard to the taxation of railroads shall apply, extend to, and include all street railways of every description."

A street-railway company is a kind of railroad company, but it does not follow that it is affected by every statute concerning railroad companies. That is a question to be determined in each case by a study of the whole body of legislation bearing upon the question. *Massachusetts Loan & Trust Co.* v. *Hamilton*, 88 Fed. Rep. 588, 32 C. C. A. 46, 59 U. S. App. 403. Such a study of the statutes to which reference has been made satisfies us that General Statutes, § 3681, does not apply to street-railway companies. Its first words, "every such company," manifestly refer to the initial words of § 3680, which are that "every railroad company may lay out its road not exceeding six rods wide." For street railways the taking of such a width of the street is never required. General Statutes, § 3681, was first enacted in 1882. At that time street-railways were operated by the use of horses, and seldom, if ever, laid except on the highway; nor, it is believed, had any street-railway charters been granted which conferred the power of taking land without the consent of the owner. The placing of this statute, twenty years later, in arranging the Revision of 1902, in a chapter entitled as relating only to steam railroads, and the omission of any reference to it in the subsequent chapter (217) of the same title entitled "Street Railway Companies," indicate that it was not intended to enlarge the scope of its application. General Statutes,

§ 3844, authorizing every street-railway company to purchase land for its roadbed, would also have been unnecessary, had they been included under the terms of § 3680. That section gives steam railroad companies power to take land by condemnation. It also, in connection with § 3687, regulates the conditions and methods of exercising the power, and it is to such regulations of the manner of proceeding that § 11 of the plaintiff's charter refers.

The records of the directors of the applicant showed that a vote to take the lands in question was passed by them on February 9th, 1907, at 11 A. M. In fact a meeting of the board for that time had been called by the secretary on the preceding day by telephonic communication with four directors. They were present at this meeting and constituted a quorum. The total number of directors was seven. The other three could not be reached before the meeting was held, and had no notice of it. After its close, all seven signed a waiver of notice, bearing the date of February 9th.

The management of a corporation cannot be paralyzed by every absence of a director from its place of business or from the State, at a time when a meeting of the board seems necessary. Notice to a majority, in such a case, if they, being all that can be reached, proceed to hold the meeting, will, in the absence of any by-law to the contrary, support their action, at least if, as in the present instance, the others subsequently sign and file a waiver of notice, and the corporation acquiesces in what was done by making it the basis of a claim of legal right. *Chase* v. *Tuttle*, 55 Conn. 455, 464, 3 Amer. St. Rep. 64, 12 Atl. 874.

The approval of the railway location by the railroad commissioners was first asked and given in January, 1907. The only attempts made by the applicant to agree with the defendant as to terms of purchase took place in 1906. It is immaterial that they were not renewed after the approval of the location and the vote of the directors. Their failure was the only occasion for that vote which, had they been successful, would have been unnecessary. Negotiation

with landowners naturally precedes a resort to condemnation proceedings.

The Middle River Manufacturing Company is a Connecticut corporation. The lands in question are in Stafford. The applicant produced evidence that one Sheehan was its treasurer in 1903, and that since that year the company had failed to file with the secretary of the State any annual statement giving the names of its officers as required by law. This authorized the inference that he was its treasurer up to the time of trial. *Gray* v. *Finch*, 23 Conn. 495, 513.

The applicant offered evidence that its land agent made reasonable inquiry for some one with whom to negotiate for a purchase of the land of that company, and as a result entered into negotiations with Sheehan, who claimed to represent it, had in his possession deeds of land in Stafford executed to it, and named a price for the land desired, which the applicant declined to give, and that he received several letters in regard to the matter from Sheehan, one of which was subscribed " The Middle River Manufacturing Co., Inc. J. M. Sheehan."

This evidence was offered and received only to show that the applicant had endeavored in good faith to obtain the the land from the company by agreement. Under General Statutes, § 3687, the application could not be sustained without proof that the applicant could not obtain it by agreement with the owner. It was not enough to prove that it had negotiated, though in the best of faith, with some one not in fact owning the land or representing the owner. But the applicant was entitled to the admission of this evidence as tending to show negotiations with one who did represent the owner. Summary administrative proceedings of this nature before a judge at chambers are not governed in respect to pleadings and evidence by the strict rules prescribed for ordinary actions at common law. They are in their nature comparatively informal. The hearing takes place not before jurors, for whose protection against being led off into immaterial inquiries or confused by remote evidence those

rules have been devised, but before a single magistrate of trained mind, who is learned in the law. The application is one calling for speedy action. The judge to whom it is addressed, while exercising judicial power, is at liberty to receive any evidence which is fairly calculated to aid him in coming to a just conclusion. Although there was no evidence as to the powers of the treasurer of the Middle River Manufacturing Company, it was competent for the judge to assume that they were such as were naturally implied in Sheehan's acts while assuming to negotiate in its behalf, and while the holder of that office.

The Eastern Connecticut Realty Company is a New York corporation. Its statement, filed in the proper office of that State in 1903, showed that Sheehan was then its treasurer. Evidence of negotiations with him as agent of that company, similar to that of the negotiations had with him as agent of the Middle River Manufacturing Company, was, for reasons already sufficiently stated, properly admitted.

The land agent of the plaintiff having also testified that he took a draft contract for the sale of land owned by the Eastern Connecticut Realty Company to Sheehan to obtain the company's signature, was permitted to state further (the contract not having been produced nor its absence accounted for), that it was drawn in terms as a contract by that company. The objections of the Eastern Connecticut Realty Company to the admission of this testimony were properly overruled. In hearings of this nature the rule excluding any but the best evidence need not be inflexibly applied.

Testimony was also properly received from the tax collector of Stafford, that in the fall of 1906 he received from Sheehan a list of the property owned by each of the defendants which was liable to taxation there, with a request to file it. This tended to fortify the presumption that Sheehan was then the treasurer of each, because he acted as such an officer naturally would in a matter in which it was important that the company should act.

The evidence introduced fully justified the finding that each application was proved true.

There is no error in either case.

In this opinion the other judges concurred.