## Town of East Haven et al. *v.* City of New Haven et al.

Alcorn, House, Cotter, Thim and Ryan, Js.

454

Argued February 4—decided June 9, 1970

*Roger J. Frechette,* assistant corporation counsel, with whom was *Thomas F. Keyes, Jr.,* corporation counsel, for the appellants (defendants).

*Anthony V. DeMayo,* with whom, on the brief, was *Edward W. Cohen,* for the appellees (plaintiffs).

RYAN, J.  This action involves questions relating to a municipal airport owned and operated by the city of New Haven and located in New Haven and East Haven.  The boundary line between the two municipalities runs through the area used as the airport.  The airport was established pursuant to the provisions of Special Acts 1927, No. 267, as amended by Special Acts 1929, No. 266.  20 Spec. Laws 289, 849.  The 1929 act provided: "The city of New Haven is authorized to establish and maintain an airport within the limits of said city and the town of East Haven and to acquire property as a site for such airport, either by purchase or by condemnation proceedings under the provisions of the general statutes."

Prior to April 17, 1940, New Haven purchased a large tract of land for the purpose of expanding the airport.  At that time, a highway known as Thompson Avenue ran between New Haven and East Haven, and in order to implement the plans to expand the airport it was necessary to close Thompson Avenue.  Following negotiations between the two municipalities, East Haven and New Haven on August 13, 1940, entered into a written contract pursuant to appropriate actions by the board of aldermen of the city of New Haven and the town meeting of the town of East Haven.  Under the terms of the contract, New Haven agreed to reimburse East Haven for any damages which East Haven might be required to pay as a result of the closing of the portion of Thompson Avenue which lay within the limits of the town of East Haven.  East Haven closed the East Haven portion of Thompson Ave-

nue at a point near the airport boundary. New Haven closed the portion of the highway lying on its side of the boundary between the two municipalities, and what had been a section of Thompson Avenue in both municipalities became a part of the extended airport runway. To replace Thompson Avenue, New Haven constructed a new road south of where that avenue had run. The portion of the new highway which lay within the bounds of East Haven was designated as Ora Avenue, and the portion which lay within the bounds of New Haven was designated as Uriah Street.

In 1967 New Haven purchased an additional seventy-three acres of land in East Haven to expand the airport and extend the north-south runway. Permission for this acquisition was not obtained from the town of East Haven, nor was its approval obtained for the proposed airport expansion. The city of New Haven pays no taxes on the airport property it owns in East Haven, and the town registered its disapproval of the airport expansion. In April, 1967, the board of aldermen of the city of New Haven, in accordance with the plan to extend the runway, formally voted that Uriah Street, in that city, from the city line to the westerly boundary of the airport "shall be closed, and vacated," and Uriah Street was effectively closed to through traffic by the action of the city in causing a section of pavement in the road to be torn up.

This summary of the factual background of the present action, although incomplete in many details, suffices for an understanding of the bitterly contested claims of the parties and the reasons for our decision on this appeal. The plaintiffs are the town of East Haven and five residents of the town, acting for themselves and, pursuant to General Stat-

utes § 52-105, in behalf of all other persons similarly situated. The defendants are the city of New Haven, the board of aldermen of that city, and the New Haven board of airport commissioners. The plaintiffs' complaint, dated April 24, 1967, alleged the agreement between the city and the town for the discontinuance of Thompson Avenue and that New Haven, in consideration of the closing of that street, agreed to construct a "replacement road which road upon completion was accepted by the Town of East Haven, became its property and came under its regulation and control." The complaint then alleged the closing of Uriah Street by New Haven and that this closing has caused the plaintiffs irreparable damage and was improper, illegal and invalid and breached the existing contract between the respective municipalities dated August 13, 1940. The plaintiffs alleged that the closing of the street deprived them of the use of the highway and of rights of access to which they were entitled under that contract and threatened them with serious safety hazards. They also alleged that necessary legal procedure was not followed in closing the street and that "said road is the property of and in the control of the Town of East Haven and the City of New Haven has no control over it and had no authority to close the same."

In a second count the plaintiffs alleged that in April, 1967, the city of New Haven publicly announced its intention to expand the airport further into East Haven, that the approval of East Haven had not been obtained for that expansion, that despite East Haven's disapproval work proceeded on the expansion and that unless New Haven is prevented from continuing the expansion the plaintiffs will suffer irreparable damage. By way of

relief the plaintiffs claimed an injunction restraining the defendants from impeding the use of the road known as Uriah Street and Ora Avenue as used from 1940 to April 22, 1967, and from performing any acts to expand the airport over any portion of East Haven for which expansion approval has not been obtained from that town, and an order directing New Haven to repair and restore the Uriah Street–Ora Avenue roadway to the condition in which it was prior to April 22, 1967. In addition the plaintiffs claimed $100,000 damages and a determination of their rights and interests in the roadway, the right of the defendants to close it, and the right of New Haven to utilize real property in East Haven to expand its airport operation.

By way of answer the defendants admitted that the two municipalities had entered into an agreement on August 13, 1940, but expressly denied that the agreement contained the terms and provisions alleged by the plaintiffs and also denied that approval by East Haven was necessary before New Haven could proceed with the work of expanding the airport. By way of special defense the defendants pleaded that their actions were necessary and were designed to operate the airport more efficiently and safely, pursuant to the directives of state and federal agencies, and that to grant the injunctive relief sought by the plaintiffs would be harsh, inequitable and oppressive. The defendants also pleaded that they stood ready, willing and able to construct a substitute or replacement road in the vicinity which would equally, or even more beneficially, facilitate vehicular traffic in the area.

The trial court concluded, inter alia, that East Haven had both a legal and equitable right to the continued existence of the road which replaced

Thompson Avenue, namely, Ora Avenue–Uriah
Street; that the agreement of August 13, 1940, has
been fully performed; that there was ample memo-
randum in writing to satisfy the Statute of Frauds;
that § 15-79 of the General Statutes, as it then
existed,[1] repealed the 1927 and 1929 Special Acts
which authorized New Haven to acquire airport
property in East Haven by purchase or condemna-
tion; and that the removal from the tax rolls of
property purchased by New Haven in East Haven
constituted a "taking" for which East Haven's per-
mission was required under the provisions of Gen-
eral Statutes § 15-79. The court rendered judgment
declaring that East Haven has a legal and equitable
right to the continued existence and use of Ora
Avenue–Uriah Street and enjoining the defendants
from impeding the layout and use of that roadway
as it existed from 1940 to April, 1967, and "from per-
forming any acts calculated to expand its airport
into, on or over any portion of East Haven for which
expansion permission has not been obtained from
said Town, whether such expansion takes the form
of physical expansion or the mere maintenance of
clear zones over property located in East Haven."
It is from this judgment that the defendants have
appealed.

Basic to the ultimate conclusions of the court are
the conclusions that East Haven has a legal and
equitable right to the continued existence of "this
replacement road" and that the "agreement of

---

[1] Section 15-79 was amended by 1967 Public Act No. 694, effective
on October 1, 1968, which date was subsequent to the May 14, 1968,
judgment in this case. The statute as thus amended was repealed
by § 263 of 1969 Public Act No. 768. Section 38 of that act was
enacted with substantially the same provisions so far as they are
relevant to the present opinion.

August 13, 1940, has been fully performed, in addition to which there is ample memorandum in writing to satisfy the Statute of Frauds." Both of these conclusions have been attacked by the defendants, who, throughout the trial, pressed objections predicated upon the Statute of Frauds. Without belaboring the point, it suffices to state that we find nothing in the exhibits or the findings of fact which supports these conclusions of the court. The agreement of August 13, 1940, cannot possibly be construed as a grant by New Haven to East Haven of any right, title or interest in Uriah Street, lying in New Haven, or as an agreement for its continued maintenance or existence. The only obligation undertaken by New Haven in that agreement was to reimburse East Haven for any damages which East Haven might be required to pay as a result of the closing by East Haven of the portion of Thompson Avenue which lay within the bounds of that town. If any further or other agreement existed, we find no evidence of it in the record. Nor do we find any written memorandum regarding it, let alone one ample to satisfy the Statute of Frauds. We deem it significant that the finding of the court is barren of any disclosure as to the terms of any agreement, written or oral, which granted to East Haven any right to the continued existence of Uriah Street, or of any basis for the conclusion that there exists "ample memorandum in writing to satisfy the Statute of Frauds" with respect to such an agreement. The agreement of August 13, 1940, contains no such provision, and the finding that the terms of that reimbursement agreement have been fully performed is without significance to this aspect of the case.

The Statute of Frauds is of ancient origin, and, as codified in this state in General Statutes § 52-550,

it contains a provision that "[n]o civil action shall be maintained . . . upon any agreement for the sale of real estate or any interest in or concerning it or upon any agreement that is not to be performed within one year from the making thereof, unless such agreement, or some memorandum thereof, is made in writing and signed by the party to be charged therewith or his agent." We said in *Santoro* v. *Mack,* 108 Conn. 683, 687, 145 A. 273: "The requirements of a memorandum of sale to satisfy the statute of frauds in this State are too well established to require extended consideration. It must state the contract between the parties with such certainty that the essentials of the contract can be determined from the memorandum itself without the aid of parol proof, either by direct statement or by reference therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement. *Miller* v. *Vordenbaum,* 105 Conn. 636, 638, 136 Atl. 382; *Shoag* v. *Sheftel,* 99 Conn. 541, 543, 121 Atl. 799; *Gendelman* v. *Mongillo,* 96 Conn. 541, 543, 114 Atl. 914; *Shelinsky* v. *Foster,* 87 Conn. 90, 96, 87 Atl. 35; 27 Corpus Juris, p. 269, § 319, p. 277, § 334. 'The memorandum of the contract need not be the contract itself, but must contain sufficient data whereby a contract satisfying the terms of the prior oral agreement of the parties might be put in extended and customary form, without the aid of oral proof.' *Handy* v. *Barclay,* 98 Conn. 290, 295, 119 A. 227. A memorandum is insufficient where a decree based thereon would not carry out the true agreement as made by the parties or where the agreement stated in the memorandum does not express the entire agreement between the parties so

these must be supplemented by parol evidence of the negotiations. *Gendelman* v. *Mongillo,* 96 Conn. 541, 545, 114 Atl. 914." See also *Marsico* v. *Kessler,* 149 Conn. 236, 237, 178 A.2d 154; *Montanaro* v. *Pandolfini,* 148 Conn. 153, 157, 168 A.2d 550; *Garre* v. *Geryk,* 145 Conn. 669, 672, 145 A.2d 829.

The court's memorandum of decision indicates that it inferred the existence of an agreement on the part of New Haven to keep Uriah Street open for the benefit of East Haven, as a result of which that town acquired a right to its continued existence. It is unnecessary to determine whether or not such an inference could reasonably and logically be drawn from any testimony submitted during the trial, since unless there existed a written memorandum satisfying the requirements of the Statute of Frauds the evidence was legally insufficient to support the court's conclusion and judgment. The record is devoid of evidence of any writing sufficient to meet these requirements, and the conclusion of the court, accordingly, cannot be supported. It follows that so far as Uriah Street in New Haven is concerned the court erred in adjudging that East Haven has a legal and equitable right to its continued existence and in enjoining New Haven from blocking the use of that street.

The defendants assign error in the refusal of the trial court to include in their claims of law the following: "The relief claimed interferes with interstate commerce." The trial court expressly found that the defendants failed to raise this claim at the trial and that it should not be entertained as a valid claim of law. The defendants urge that it was raised in a pretrial brief and in a brief "in lieu of claims of law." Neither of the named documents is in the record or the appendix to the defendants'

brief. In view of this, there is nothing to indicate that the action of the trial court was erroneous.

The remaining decisive issue on the appeal concerns the order issued by the court enjoining New Haven "from performing any acts calculated to expand its airport into, on or over any portion of East Haven for which expansion permission has not been obtained from said Town, whether such expansion takes the form of physical expansion or the mere maintenance of clear zones over property located in East Haven." This injunction is predicated on the conclusion of the trial court that § 15-79 of the General Statutes, as it then existed, repealed the special act of 1929, under the provisions of which the General Assembly granted to New Haven the right "to establish and maintain an airport within the limits of said city and the town of East Haven and to acquire property as a site for such airport, either by purchase or by condemnation proceedings under the provisions of the general statutes." Thus New Haven was permitted by the special act to purchase or condemn land for an airport in the town of East Haven without securing approval from that town.

In order to determine the correctness of the trial court's conclusion, an examination of the legislative history of the statutes involved is required. At the same session of the legislature (1929), the General Assembly enacted chapters 236 and 253 of the Public Acts of 1929, both of which concerned aeronautics and became the major part of chapter 185 of the 1930 Revision of the General Statutes. Section 1 of chapter 236 became § 3092 of that Revision, which provided as follows: "Any town, city or borough may establish an airport in any location which shall have been approved by the commissioner. Any

municipality which shall have established an airport or the owner of any privately owned airport established prior to July 1, 1929, may take any land when, in the opinion of the commissioner of aeronautics, public convenience or safety shall require, upon paying to the owner of such land just compensation. In case such municipality or such other owner of an airport shall be unable to agree with the owner of such land upon the amount of such compensation, the same shall be determined in the manner prescribed in section 5072 for the taking of land for state institutions; but an appeal from the amount so determined shall not act as a stay of the taking of such land." This act, which became effective July 1, 1929, thus permitted any town, city or borough, with the approval of the commissioner of aeronautics, to establish an airport in "any location" either by purchase or, if the parties are unable to agree upon the amount of compensation, by eminent domain. The right of eminent domain under the provisions of § 3092 (Rev. 1930), by its express terms, applies only "[i]n case such municipality or such other owner of an airport shall be unable to agree with the owner of such land upon the amount of such compensation." "Inability to agree is a condition precedent to relief under the statute. *Stafford Springs Ry. Co.* v. *Middle River Mfg. Co.,* 80 Conn. 37, 42, 66 A. 775; *Connecticut College* v. *Alexander,* 85 Conn. 602, 605, 84 A. 365, 366. It is incumbent upon the condemnor to exhaust 'all reasonable efforts to obtain the land it desires, by agreement.' *New York, N.H. & H.R. Co.* v. *Long,* 69 Conn. 424, 438, 37 A. 1070." *West Hartford* v. *Talcott,* 138 Conn. 82, 89, 82 A.2d 351. The act also empowered any municipality which had established an airport, or the owner of any privately owned airport which

had been established prior to the effective date of the act, to extend the airport and to procure by purchase or by eminent domain "any land" with the approval of the commissioner, not only within the confines of one municipality but in other municipalities as well. The granting of the power of eminent domain to the owner of a privately owned airport for purposes of expansion is most unusual.

At the same legislative session the General Assembly adopted chapter 135 of the 1929 Public Acts (now § 12-74 of the General Statutes), which exempted from taxation, subject to certain conditions, "[a]ll property owned by any town or city, which is located in another town and used for the purposes of an airport." It is noteworthy also that the manner of condemnation of land for airport purposes was that prescribed by General Statutes for the taking of land for state institutions—wherein the matter is referred to a state referee—rather than the statutory method of condemnation employed by municipalities—three disinterested persons. See chapter 185 of the 1929 Public Acts and *State* v. *Giant's Neck Land & Improvement Co.*, 116 Conn. 119, 124, 163 A. 651. These statutes clearly indicated the intention of the legislature to promote and encourage aviation by bringing about an increase in the number of municipal airports in the state and their extension into other municipalities without limitation as to their desirability in the towns into which they would intrude. At this time the policy expressed in the 1929 special act authorizing New Haven to establish and maintain an airport in New Haven and East Haven was not in conflict with the basic legislative policy expressed in § 3092 (Rev. 1930) of permitting the extension of airports into other municipalities by purchase or by con-

demnation, with or without the consent of those municipalities. It was strictly in accord with it.

In the Special Session of May, 1946, Public Act No. 10 of that session was adopted. Section 49 of that act repealed all but two sections of chapter 185 of the Revision of 1930, and § 3092 was among those repealed. A new chapter on aeronautics was adopted. Section 42 of the act, as amended by § 833i of the 1947 Supplement, provided as follows: "The state or any municipality, or any two or more municipalities jointly, may establish, maintain and operate an airport at any location within the state approved by the commission and by the municipality or municipalities within which such airport is to be established, and where such airport is established by a municipality or two or more municipalities, jointly, such airport shall also have been approved by such municipality or municipalities in manner as follows: Towns, by vote of the town; cities, by vote of the city council; and boroughs, by vote of the borough; and may take any such land or interest therein for such establishment or for the expansion or improvement of an airport when, in the opinion of the commission, public convenience or safety requires, and when the approval of the municipality or municipalities in which such land is located has been legally obtained, upon paying just compensation to the owner of such land or interest therein. In case the state or such municipality or municipalities cannot agree with such owner upon the amount of such compensation, the same shall be determined in the manner prescribed in section 5072, as amended by section 1311e, for the taking of land for state institutions . . . ." This section, known as § 15-79 of the General Statutes, in effect at the time of trial, was a drastic change in legislative policy from that

of § 3092 (Rev. 1930). It prohibited municipalities from purchasing or taking land in any other municipality for the establishment, expansion or improvement of an airport without the approval of that municipality. The state itself was prohibited from establishing, expanding or improving any airport without the approval of the municipality or municipalities concerned. This was a patent shift of policy from one permitting extension of municipal airports into other municipalities with no power in the towns so invaded to prohibit it to one prohibiting not only all municipalities from so doing but the sovereign as well, unless the permission of the municipality concerned was first obtained.

The plaintiffs claim that while this general statute (§ 15-79) does not expressly repeal the 1929 special act (20 Spec. Laws 849, No. 266) it is basic law that when a later general statute covers the whole subject to which it relates it will be held to repeal by implication all prior statutes on the subject matter, whether general or special. If New Haven is bound by § 15-79, it could not expand its airport into the town of East Haven without that town's permission. The statute gives to a municipality authority to enlarge its airport into another town by purchase or by exercise of the power of eminent domain, but only with the approval of the other town. "Towns and cities under our form of government in Connecticut, have no inherent right of self-government, and no powers save such as are granted to them by the legislature, expressly or by necessary implication, subject, of course, to constitutional limitations." *Connelly* v. *Bridgeport,* 104 Conn. 238, 252, 132 A. 690.

On the question whether the enactment of the predecessor of § 15-79 repealed the earlier special

act, the general rule is that "[a] special and local statute, providing for a particular case or class of cases, is not affected by a statute general in its terms, broad enough to include cases embraced in the special law, unless the intent to repeal or alter is manifest." *State ex rel. Wallen* v. *Hatch,* 82 Conn. 122, 124, 72 A. 575. "But whenever it is made to appear that the legislature intended to repeal a special act by any general legislation, then the special act falls, although not named. And such intention may be made to appear by the words of the general act, by the subject-matter with which the general act is concerned, by other legislation on the same matter, by the surrounding circumstances, by the purpose to be accomplished, or by anything else to which reference may properly be had for the purpose of discovering the legislative intent." *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475, 484, 34 A. 483.

"When a subsequent enactment covering a field of operation coterminous with a prior statute cannot by any reasonable construction be given effect while the prior law remains in operative existence because of irreconcilable conflict between the two acts, the latest legislative expression prevails, and the prior law yields to the extent of the conflict." 1 Sutherland, Statutory Construction (3d Ed.) § 2012, p. 463. "There is no rule which prohibits the repeal by implication of a special or specific act by a general or broad one. The question is always one of legislative intention, and the special or specific act must yield to the later general or broad act, where there is a manifest legislative intent that the general act shall be of universal application notwithstanding the prior special or specific act." 50 Am. Jur. 565, Statutes, § 564.

"Wherever a later statute is repugnant in its provisions to those of a prior one, there is a repeal to the extent of the repugnancy; and wherever a later statute is exclusive, that is, when it covers the whole subject to which it relates, the former is repealed." *Fair Haven & W.R. Co.* v. *New Haven,* 75 Conn. 442, 446, 53 A. 960. "[I]f the language of the later statute is so repugnant to that of the earlier one that the two cannot possibly stand together, then the earlier one is repealed by the later; and it makes no difference that one is a general act and the other a special one." *Hartford* v. *Hartford Theological Seminary,* supra, 485. " 'It is a familiar rule that when a later statute is exclusive, that is, when it covers the whole subject to which it relates, it will be held to repeal by implication all prior statutes on the matter, whether they are general or special.' *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475, 484, 34 Atl. 483; *State ex rel. Reiley* v. *Chatfield,* 71 Conn. 104, 112, 40 Atl. 922; *Fair Haven & W.R. Co.* v. *New Haven,* 75 Conn. 442, 446, 53 Atl. 960; *State* v. *Maioffes,* 118 Conn. 199, 201, 171 Atl. 625." *Hutchison* v. *Hartford,* 129 Conn. 329, 332, 27 A.2d 803; *McAdams* v. *Barbieri,* 143 Conn. 405, 413, 123 A.2d 182.

"Even where the two Acts are not in express terms repugnant, yet if the later one covers the whole subject of the former, and embraces new provisions plainly showing that it was intended as a substitute for the former, it will operate as a repeal of the former. *United States* v. *Tynen* [78 U.S. (11 Wall.) 88]." *Fair Haven & W.R. Co.* v. *New Haven,* supra. "So far as pre-existing provisions, by their repugnancy or inconsistency, stand in the way of the full and effective operation of the final expressed will of the legislature, they stand, in law, as *pro*

*tanto* repealed. Not only is this true of those provisions which are on their face inconsistent with the Act, but of any others which upon examination and analysis are found to hamper or interfere with its workability." *Connelly* v. *Bridgeport,* supra, 253.

The city of New Haven urges that since the special act permitted it to expand its airport into the town of East Haven by purchase as well as by condemnation of land, and since § 15-79 prohibits the taking of land for airport purposes in another town without permission of that town only in the exercise of eminent domain, the city of New Haven, having acquired land in the town of East Haven by purchase, cannot be prevented from using it for airport purposes since, in this respect, there is no repugnancy between the two statutes. With this we cannot agree. The provisions of § 15-79 and its predecessor, § 833i of the 1947 Supplement to the General Statutes are, in pertinent part, identical: "In case the state or such municipality or municipalities cannot agree with such owner upon the amount of such compensation, the same shall be determined in the manner prescribed . . . for the taking of land for state institutions . . . ." This statute not only permits purchase of such land but by its terms makes it incumbent upon the condemnor to exhaust all reasonable efforts to obtain the land it desires by agreement. *West Hartford* v. *Talcott,* 138 Conn. 82, 89, 82 A.2d 351. "Inability to agree is a condition precedent to relief under the statute . . . ; General Statutes § 15-79 . . . ." *State* v. *Fahey,* 147 Conn. 13, 15, 156 A.2d 463.

Between 1929 and 1946 airplanes and airports were drastically changed. Planes were larger and faster and needed greater areas for takeoff and landing. An airport which was adequate in 1929

might well be totally inadequate in 1946. The necessity for larger airports was increasing in Connecticut and throughout the nation. The annoyance to residents living in proximity thereto increased. A general statute which permitted intrusion of municipal and privately owned airports into other municipalities without their permission presented a grave problem. This was common knowledge. The legislature was obliged to consider these facts in 1946, and the legislative records so indicate. In the light of the language used in § 15-79, it is clear that the basic purpose of that statute was to prevent intrusion of an airport into another municipality, either by purchase or by condemnation, without its consent. The statute permits the establishment, expansion or improvement of an airport by purchase or by eminent domain subject to the approval of the municipality wherein the land is located. Such permission, legally obtained, is a condition precedent to the acquisition of the land for such purposes and use. "Where an earlier statute is special, only in the sense that it applies to a single case of which there may be many in the State, and the later one is general in its operation and applies to all such cases, then the earlier one is repealed by the later, because the whole includes the several parts." *Hartford* v. *Hartford Theological Seminary,* supra, 485. "In this conflict between the exercise of legislative power in the general public interest of the state by a general statute and its exercise in the interest of a local community by a special act, the former must prevail unless the intent that it shall not is clearly expressed in the legislation." *Delinks* v. *McGowan,* 148 Conn. 614, 623, 173 A.2d 488.

We conclude that the subject matter of § 15-79 covers the whole field of the establishment, expan-

sion and improvement of airports in the state. This later statute is exclusive, and its provisions are manifestly repugnant to the 1929 special act.

A further question arises as to whether the trial court was correct in prohibiting the defendants from expanding into the town of East Haven by the maintenance of "clear zones" over property in East Haven. Section 15-34 (7) of the General Statutes defines "Airport" as "any area of land or water . . . which is designed for the landing and take-off of aircraft . . . or for receiving or discharging passengers or cargo, and all appurtenant areas used or suitable for airport buildings or other airport facilities, and all appurtenant rights-of-way." Section 15-34 (9) defines "Airport protection privileges" as "easements through or other interests in air space over land or water, interests in airport hazards outside the boundaries of airports . . . and other protection privileges the acquisition or control of which is necessary to insure safe approaches to the landing areas of airports . . . and the safe and efficient operation thereof."

From these definitions it is obvious that clear zones are embraced within "airport protection privileges" and are not part of "airports" per se. Section 15-73,[2] concerning "airport protection privileges," provides in pertinent part that "[w]here necessary in order to provide unobstructed air space for the landing and taking-off of aircraft, . . . in case of municipal airports, the municipality, is granted authority to acquire, *in the same manner as is provided for the acquisition of property for airport purposes,* easements through or other interests

---

[2] It is noteworthy that §§ 15-34 (7) and (9) as well as § 15-73 were, together with § 15-79, first adopted as part of Public Act No. 10 of the May, 1946, Special Session.

in air space over land or water, interests in airport hazards outside the boundaries of the airports . . . and such other airport protection privileges as are necessary to insure safe approaches to the landing areas of such airports . . . and the safe and efficient operation thereof." (Emphasis added.) The conclusion is inescapable that the extension and maintenance of clear zones into the town of East Haven require as a condition precedent the approval of the town of East Haven in the manner provided in § 15-79 when land is taken for airport establishment or expansion. Such approval has not been obtained.

There is error in the portion of the judgment wherein the trial court adjudged that the plaintiff town of East Haven has a legal and equitable right to the continued existence of Ora Avenue–Uriah Street and enjoined the defendants from blocking, interfering with or in any way impeding the layout and use of Ora Avenue–Uriah Street as it existed from 1940 to April, 1967.

There is no error in the remaining portion of the judgment to the extent that it enjoins the defendants from performing any acts to expand their airport into, on or over any portion of East Haven for which expansion permission has not been obtained from that town, whether such expansion takes the form of physical expansion or whether it takes the form of the maintenance of clear zones over property located in East Haven.

The remaining assignments of error do not require discussion.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion ALCORN, C. J., and COTTER, J., concurred.

House, J. (dissenting). I do not agree with the portion of the opinion which holds that subsequent legislation repealed Special Acts 1929, No. 266 (20 Spec. Laws 849), by which the General Assembly expressly granted to New Haven the right "to establish and maintain an airport within the limits of said city and the town of East Haven and to acquire property as a site for such airport, either by purchase or by condemnation proceedings under the provisions of the general statutes." There has been no express repeal, and repeal by implication is not favored. *Knights of Columbus Council* v. *Mulcahy*, 154 Conn. 583, 591, 227 A.2d 413. The established rule of statutory construction in this state has remained unchanged since it was early expressed in 1 Swift, Digest, p. 12, in 1822: "Later statutes repeal prior contrary statutes. This must be understood where the statutes are expressly contrary or negative words are used: otherwise, if both the statutes can be reconciled, they must stand and have a concurrent operation."

" 'A statute is impliedly repealed by a later statute only if the latter is necessarily repugnant to the former.' *Landry* v. *Personnel Appeal Board*, 138 Conn. 445, 451, 86 A.2d 70, and cases cited. They are 'repugnant only when both cannot reasonably be given effect.' *State* v. *Giant's Neck Land & Improvement Co.*, 116 Conn. 119, 122, 163 A. 651. If courts can by any fair interpretation find a reasonable field of operation for both statutes without destroying or perverting their evident meaning and intent, it is the duty of the courts to do so, thus reconciling them and according them concurrent effect. *Leete* v. *Griswold Post*, 114 Conn. 400, 405, 158 A. 919; *Costa* v. *Reed*, 113 Conn. 377, 385, 155 A. 417, and cases cited; 1 Sutherland, Statutory Construction (3d

Ed.) § 2014." *Shanley* v. *Jankura,* 144 Conn. 694, 702, 137 A.2d 536. "Therefore, where the later general statute does not propose an irreconcilable conflict, the prior special statute will be construed as remaining in effect as a qualification of or exception to the general law." 1 Sutherland, op. cit. § 2021. "A special and local statute, providing for a particular case or class of cases, is not affected by a statute general in its terms, broad enough to include cases embraced in the special law, unless the intent to repeal or alter is manifest." *State ex rel. Wallen* v. *Hatch,* 82 Conn. 122, 124, 72 A. 575; 50 Am. Jur. 565, Statutes, § 564. The early special grant of authority to New Haven is not irreconcilable with the later general statutes granting a general and more limited authority to any municipality in connection with any airports thereafter "to be established"; nor do the later general statutes contain any "negative words." I cannot agree that the General Assembly manifested an intention to repeal the 1929 special act.

New Haven was first granted legislative authority to establish an airport by Special Act No. 267 of the 1927 session of the General Assembly. 20 Spec. Laws 289. This act authorized New Haven "to establish and maintain an airport within the limits of said city." Significantly, the 1929 session by Special Act No. 266 (20 Spec. Laws 849), amended the 1927 act to authorize New Haven "to establish and maintain an airport within the limits of said city and the town of East Haven." It was this same 1929 session, which thus expressly authorized New Haven to acquire airport land in East Haven, which also enacted chapter 236 of the 1929 Public Acts, the predecessor of § 15-79 of the General Statutes, providing a general authority for the future establishment of

airports by any municipality which elected to proceed under the General Statutes rather than by special authorization from the legislature. Obviously the General Assembly, as it had the right to do, expressly granted to New Haven special authority and powers beyond those granted under the general law.

I find nothing in the subsequent legislation repugnant to or irreconcilable with, much less implying the repeal of, the special authority granted to New Haven by the 1929 special act to acquire land in East Haven for its airport. On the contrary, I conclude that not only is there no repugnancy between the General Statutes and the 1929 special act authorizing the creation of the New Haven airport in that city and in the town of East Haven but it is manifest that the General Assembly specifically intended that the New Haven airport, as one of the first airports to be established in the state, should be an exception to the general provisions which should govern airports thereafter "to be established." § 15-79.

In view of this basic disagreement with the conclusion reached in the majority opinion as to this aspect of the case it is unnecessary to comment further on that opinion. I would, however, note my doubt that § 15-79 of the General Statutes as it existed at the time in question encompassed the situation, presented by this case, where a municipality has by purchase acquired land for airport purposes. That statute provided that a municipality or municipalities "may *take* any such land or interest therein . . . for the expansion or improvement of an airport" upon compliance with the procedures prescribed in the statute. (Emphasis added.) Despite the implication of the majority opinion as to the

effect of § 15-79, neither the word "purchase" nor the word "buy" appears in the statute. See, e.g., 20 Spec. Laws 849, No. 266; Mass. Gen. Laws Ann. c. 90 § 51G; N.Y. Gen. Mun. Law § 353-a (McKinney 1965). The word "take" in the context of property acquisition commonly means to exclude the property owner from his private use and possession by condemnation for public purposes under the power of eminent domain, which, in turn, involves a preliminary determination that the acquisition of the property is necessary for a public purpose. See *Trumbull* v. *Ehrsam*, 148 Conn. 47, 55, 166 A.2d 844; *Clark* v. *Cox*, 134 Conn. 226, 229, 56 A.2d 512; *Bishop* v. *New Haven*, 82 Conn. 51, 58, 72 A. 646. While I would not decide the case on the basis of § 15-79, I am nonetheless concerned that the conclusion reached in the majority opinion necessitates the reading into § 15-79 of a limitation upon a municipality's power to purchase which is by no means clearly expressed in that statute.

In this opinion THIM, J., concurred.