[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO DISSOLVE TEMPORARY INJUNCTION
I
The defendants, University of Connecticut (University), Robert S. Broadhead (Broadhead) and Douglas D. Heckathorn (Heckathorn), Professors of Sociology at the University, have moved this court to dissolve a temporary injunction obtained by the plaintiff City of New London (New London), which was granted ex parte. The order enjoined the defendants from operating a `research center' at 92 Truman Street, New London.
The parties submitted memoranda of law, affidavits, documentary materials and the New London zoning regulations.
The University was awarded a grant of $2.8 million from the National Institute on Drug Abuse, part of the National Institutes of Health, to fund a research project, named Eastern Connecticut Health Outreach (ECHO), which is to begin July 1, 1993 and continue for at least five years. The project goals include: the combating of the spread of Human Immunodeficiency Virus (HIV) infection and Acquired Immunodeficiency Syndrome (AIDS) among `out of treatment' drug users, their sexual partners and others; and, research into the backgrounds and behaviors of the participants at risk for contracting HIV and AIDS. The ECHO project expects, based on this research, to provide data to medical and other service providers, and health and other governmental officials, informing them of the serious health risks their communities face, and of preventative measures they may take.
The defendants considered many communities in Eastern Connecticut and determined that New London and Windham (Willimantic) were the most appropriate match for the operation of its control and experimental sites for the conduct of the CT Page 1835 project. The defendants have already begun operation in Windham. They have entered into a lease for premises at 92 Truman Street, in New London, for which the University pays rent.
According to the affidavits of Broadhead dated December 16, 1993 and February 1, 1994, and of Heckathorn dated December 17, 1993, which are undisputed by the plaintiff, they each hold a Ph.D. degree and are the principal research investigators for the ECHO project and will be responsible for its operation and supervision under the direction of Jean-Paul Grund, Ph.D., an assistant professor and ethnographer at the University. The defendants propose to operate in New London two days a week during regular business hours, during which participants will be interviewed about their drug use history and behaviors which put them at risk for HIV and AIDS. ECHO is not a treatment, rehabilitation or counseling program, nor is it residential. It is also not a `drop-in' center. All interviews of New London area participants are to be conducted by scheduled appointments.
New London's population is approximately 28500, and it is deprived of adequate AIDS and HIV prevention services, especially in its `inner-city' areas. More than one-half of its reported AIDS cases are associated with drug use by needle injection.
New London has the third highest per capita AIDS rate in the state; as of October 29, 1993, there were 89 cases of full-blown AIDS reported in the city. Statewide incidence of HIV and AIDS has increased dramatically in recent years, and it is evident that this poses an extremely serious health threat and menace to state residents, including those of the New London area community. See affidavits of Broadhead, supra.
Broadhead and Heckathorn were asked by Ned Hammond, New London's Zoning Officer (ZO) to meet with a subcommittee of New London's Planning and Zoning Commission (PZC). The PZC subcommittee members were adamantly opposed to the designated location of the defendants' ECHO project.
On November 23, 1993, the defendants were informed that they would be unable to file a complete application for their intended use under present regulations, as the ZO concluded that their use was not permitted as of right, and therefore was prohibited. A temporary injunction was obtained ex parte by the CT Page 1836 plaintiff which enjoined the defendants from operating their research project at 92 Truman Street in New London.
 II
A temporary injunction is a preliminary judicial order granted at the outset or during the pendency of an action, forbidding performance of the threatened acts alleged until the rights of the parties respecting them have been finally determined by the court. Deming v. Bradstreet, 85 Conn. 650, 659
(1912). The primary purpose of a temporary injunction is to preserve the status quo and protect the moving party from immediate and irreparable harm until the rights of the parties can be determined after a full hearing on the merits. Olcott v. Pendleton, 128 Conn. 292, 295 (1941). (Emphasis added) The issuance or continuance of an injunction is the exercise of an extraordinary power which rests in the sound discretion of the court. Scoville v. Ronalter, 162 Conn. 67, 74 (1971).
A plaintiff, to be entitled to such relief, must show: (1) probable success on the merits of its claim; (2) irreparable injury; (3) the lack of an adequate remedy at law; and (4) a balancing [in its favor] of the results or harm which may be caused to one party or the other by the granting or denying of the temporary relief requested. See Griffin Hospital v. Commission on Hospitals Health Care, 196 Conn. 451, 457-58
(1985). "[W]here a statute authorizes a municipality or public entity to seek an injunction in order to enforce compliance with a local zoning ordinance; see General Statutes 8-12; the municipality is not required to show irreparable harm or unavailability of an adequate remedy at law before obtaining an injunction; rather, all that must be shown is a violation of the ordinance." Farmington v. Viacom Broadcasting, Inc., 10 Conn. App. 190,197 (1987), cert. denied, 203 Conn. 808 (1987). However, a decision to grant or deny an injunction must be compatible with the equities in the case which include the gravity and wilfulness of the violation, the potential harm to the parties, and the public interest involved. Crabtree v. Coyle, 19 Conn. App. 208, 211 (1989); Johnson v. Murzyn, 1 Conn. App. 176,180, cert. denied, 192 Conn. 802 (1984).
The court must analyze the facts in the light of the above-stated principles, and determine, in the exercise of its discretion, whether the temporary injunction granted ex parte ought to be continued or dissolved. CT Page 1837
The defendants claim that the plaintiff does not and cannot show a likelihood of success on the merits. The defendants argue that because the state has preempted all authority over the state system of higher education, the New London zoning regulations as applied to the defendants' use of office space are void and of no legal effect. While a resolution of this issue is not necessary at this point, defendants' argument appears doubtful. See, e.g., Dwyer v. Farrell,193 Conn. 7, 14 (1984); East Haven v. New Haven, 159 Conn. 453, 469
(1970). Moreover, the defendants have not cited any case authority or state statute applicable to, or in support of this specific contention.
The defendants further argue that their proposed use of space at 92 Truman Street is a service business, and hence, a permitted use under the city's zoning regulations. The plaintiff argues, however, that because the subject property at 92 Truman Street is located in a General Commercial (C-1) Zoning District, the defendants' proposed use of the property will violate the city's zoning regulations. Uses permitted in a C-1 district include "service business," and "business and professional offices." New London Zoning Regulations (hereinafter Regulations), Article V, Section 510.2, effective November 25, 1993.
"Professional Office" is defined in Section 210 of the regulations, which states, in pertinent part:
 Professional Office — Office for person or persons whose vocation or occupation requires advanced training in liberal art or science, a State license or certification, and whose work involved non-manual work and services are rendered rather than goods offered for sale on the premises, and including doctors, dentists, other medical professionals, lawyers, engineers, and architects.
 The following or similar uses are not professional offices: contractor, beauty parlor, insurance agent, medical testing laboratory, pest control, pharmacy, real estate agent. CT Page 1838
(Emphasis in original.)
The regulations do not define the term business or service business. The defendants claim that there are many activities analogous and comparable to their use already located in the specific C-1 district where the ECHO office is located. These activities include: a substance abuse counseling service, a methadone clinic, a women's shelter and rape-crisis center, an AIDS education service and a community justice organization aimed at integrating former offenders. The plaintiff has not shown whether any of these uses were legally nonconforming or specially permitted in the C-1 district pursuant to 510.3 of its regulations.[1] Nor has it shown that these analogous uses were not construed to be permitted uses in the district by authorized officials and boards, or put another way, those uses which are a matter of right. Thus, it is unclear at this point whether the defendants' proposed research project will in fact violate the applicable zoning regulations, as they have been previously interpreted by New London's land regulation agencies and officials.
Remarks by PZC members suggest that some hold a preconceived bias against the ECHO project. For example, the chairman of the PZC stated: "We already have too many programs in New London. I mean, I would like to see them get rid of social welfare even, and food stamps, and all the other programs that make New London a magnet for people to move here." (Heckathorn Affidavit dated December 17, 1993, p. 4.) He is further quoted as stating: "I hate drug users. I wish we had a policy just like Red China, that we line 'em up against a wall and execute them when they're caught." Id. The possibility that these and other similar statements may have improperly influenced and affected the objectivity of the ZO's[2] decision-making process must be considered in weighing the equities in this case.
The plaintiff basically argues that all it needs to allege and show is a violation of its zoning regulations, and that it need not allege or prove irreparable harm, for it to obtain a temporary injunction. It cites General Statutes and cases such as Farmington v. Viacom Broadcasting, Inc.,10 Conn. App. 190, 197, cert. denied, 203 Conn. 808 (1987); Greenwich v. Kristoff, 2 Conn. App. 515, 521, cert. denied,194 Conn. 807 (1984); Johnson v. Murzyn, 1 Conn. App. 176, 179, cert. denied, 192 Conn. 802 (1984); for that proposition. CT Page 1839
These cases do so hold, but all involve the granting of a permanent injunction after a full hearing on the merits. None involves a temporary injunction.[3] Nor does this case appear to be brought pursuant to General Statutes 8-12, as that section is nowhere mentioned in the plaintiff's amended verified complaint, as required by Practice Book 109A(a);[4] furthermore, no monetary penalties are sought as 8-12 provides.
Even if 8-12 applies and authorizes New London[5] to seek a permanent injunction, the statute does not specifically authorize the granting of a temporary injunction.
As Judge Vertefeuille so aptly pointed out when denying an application for a temporary injunction against an alleged zoning violation sought by a town enforcement official:
 There are several sound reasons why the court should not generally issue temporary injunctions in zoning enforcement actions where there is no showing of any particular harm. First, because a temporary injunction is not a final judgment. The lack of a right of appeal makes the court wary of issuing a temporary injunction because the defendant cannot challenge the ruling or obtain relief from it despite the fact that the injunction may severely harm the defendant.
 A second related reason militating against the issuance of temporary injunctions in zoning enforcement cases without any showing of harm is the fact that issuance of temporary relief may moot the need for permanent relief. In this case, as in many others brought pursuant to Conn. Gen. Stat. the relief sought byway of temporary injunction is identical to the permanent injunction sought. Issuance of the temporary injunction therefore may very well make moot the permanent relief sought. If the plaintiff obtains all the relief sought in a temporary order which is not appealable, it has no need for the permanent CT Page 1840 relief and no incentive to bring the case to conclusion. Under these circumstances there is a clear opportunity for abuse of the defendant's rights. (Internal citations omitted.)
Kwiatkowski v. Johnson, Superior Court, Judicial District of Fairfield at Bridgeport, No. 307032 (October 27, 1993).
Should the injunction be continued, the potential harm to the defendants is tremendous. The plaintiff, however, neither alleges nor shows that it will suffer any harm if the injunction is dissolved. Indeed, it only seeks vindication of its zoning regulations. As long as the defendants are enjoined, they are seriously hampered in the conduct of their research study. This greatly jeopardizes the continued funding of their $2.8 million grant, and could involve the loss of the entire grant.
The great public importance to be served by the ECHO project cannot be denied. The project will educate participants in measures they could take to reduce their risk of contracting or spreading the HIV virus. Additionally, research analysis of the data collected would provide valuable information and insight into the risks the community faces from the HIV virus and AIDS, as well as effective methods to prevent the spread of disease.
Thus, it appears that applying the balancing test of harm to each party approved by the court in Griffin Hospital, supra, it is clear that the plaintiff would suffer no harm if the injunction were dissolved, while the defendants would suffer great harm if it were not, which also may very well result in the mootness of this case.
It is also well settled that a temporary injunction should not be granted where the plaintiff's legal rights are not clear or are doubtful. See Griffin Hospital v. Commission on Hospitals Health Care, supra, 196 Conn. 457; Zoning Commission v. Leninski, 34 Conn. Sup. 66 (1976); Fuller, supra, 41.4. In this case, the plaintiff has made no clear showing that the defendant's proposed use violates its zoning regulations, in the light of the many comparable uses already in existence in its C-1 General Commercial Zoning District.
As previously stated, the continuance or dissolution of a temporary injunction is within the sound discretion of the CT Page 1841 court. The review of the Griffin Hospital, supra, factors in the light of the facts presented compels the court to conclude that the balance of the equities all weigh heavily in the favor of the defendants. "An injunction is an equitable remedy, and may be denied if the balance of the equities favors the defendant." Connecticut Light Power Co. v. Holson Co., 185 Conn. 436, 444
(1981). Moreover, the court cannot lose sight of the primary purpose of a temporary injunction. That is, to protect the moving party from immediate and irreparable harm. Olcott v. Pendleton, supra, 295. This primary purpose does not exist here, as there is no immediate or irreparable harm threatening the plaintiff. Accordingly there is no reasonable basis at this time to continue the temporary injunction in effect.
The defendants' motion to dissolve the temporary injunction is granted.
The court orders the parties to close the pleadings and claim the case for the trial list. The parties have also advised the court they will expedite discovery proceedings. At the same time, the court must observe that it is both wasteful and doubly unfortunate for two governmental bodies to litigate this issue of great public significance; rather, the court urges them to earnestly pursue a resolution of this matter by way of negotiation and mediation.
Teller, J.